**Stacey Lamont LAWTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71759.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 6, 1995.

Rehearing Overruled Jan. 17, 1996.

---

Donald Killingworth, Tyler, Brent Newton, Houston, for appellant.

Matthew W. Paul, Asst. State's Attorney, Austin, Edward J. Marty, Asst. Dist. Atty., Tyler, Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION

MEYERS, Judge.

In July 1993, appellant was tried and convicted of capital murder under Texas Penal Code § 19.03(a)(2). The offense, murder in the course of robbery/burglary, was committed on December 24, 1992. The jury affirmatively answered the special issue submitted under Article 37.071 § 2(b)(1).[1] Appellant was sentenced to death as mandated by Article 37.071 § 2(g). Article 37.071 § 2(h) provides direct appeal to this court. Appellant raises twenty-eight points of error. We affirm.

A brief review of the facts will be useful in considering the issues raised. Reviewed in the light most favorable to the verdict, the evidence established the following: On the night of December 23, and early morning of December 24, 1992, appellant, Karlos Fields, and Carlos Black conspired to and did burglarize several vehicles in Smith County. Using a stolen shotgun, appellant stood guard while his coconspirators burglarized the vehicles. Witnesses testified that appellant would stand at a distance from the vehicles being burglarized, pointing the shotgun at the windows and doors of the houses near which the vehicles were parked. Appellant

had informed his coconspirators that he would "bust on" (shoot) anyone who might attempt to interfere in the burglary spree. In the pre-dawn hours of Christmas Eve, the victim was awakened by his daughter, who informed him that his truck was being burglarized. The victim ran out into his front yard and was there gunned down by appellant; he died shortly thereafter of the injuries sustained. Appellant and his coconspirators were apprehended after a high-speed car chase.

■ In points of error one and two appellant charges the trial court reversibly erred in conducting a voir dire examination and a pre-trial hearing in his absence in violation of Articles 33.03 and 28.01, respectively. The same incident gives rise to both of appellant's allegations.

According to the record, after the morning voir dire on June 18, 1993, the trial judge, Judge Kent, recessed the proceedings but asked to speak with counsel for both sides in her chambers. The court reporter was present for the *in camera* discussion, but appellant was excluded. The court apprised the parties that veniremember Jackson had informed the bailiff that on the preceding night, she had received a collect telephone call from the Smith County jail. The caller had asked to speak with Jackson by her first name and had identified himself as "Stacey." Judge Kent informed the parties that for appellant's own protection and that of the venire, she intended to order that a record be kept of telephone calls placed by appellant. Neither party objected.

Expressing "concern," the State then asked how the telephone calls impacted upon Jackson and the voir dire proceedings. The Defense echoed the State's "concern." Judge Kent responded that she would not dismiss Jackson without evidence that the incident had prejudiced her. The State offered to agree to excuse Jackson, but Judge Kent resisted this offer on grounds that it would create an incentive for defendants to call veniremembers they wanted excused from jury duty. Expressing concern that Jackson was prejudiced, Defense counsel of-

---

1. All article references are to the Texas Code of Criminal Procedure unless otherwise indicated.

fered to use a peremptory challenge to remove Jackson. The State again suggested that both parties agree to dismiss the veniremember to avoid having to examine her in open court. Judge Kent consented to the agreed excusal of Jackson, but insisted that she be brought into chambers and herself recount the incident for the record. Agreeing to this, the Defense stated that under the circumstances, they felt the unusual resolution was necessary to "maintain the integrity of the jury system." Defense counsel added that this course of action was better than losing a peremptory challenge. Jackson was then called into the judge's chambers and asked to relate the incident for the record. She reported the facts of the incident and added that she did not know anyone named Stacey or anyone in jail. Both parties declined to question Jackson. Jackson was thanked and dismissed from jury duty. Immediately following Jackson's testimony, the parties returned to the court room. Judge Kent asked if either party wished to make a statement for the record. Defense counsel responded that he wished the record to reflect that they had discussed the matter with appellant, that appellant denied placing the telephone call, and that appellant was highly agreeable to the resolution of the matter and agreed that the excusal of Jackson was the best way to protect his interest in the integrity of the trial.

■ Under Article 33.03 a defendant must be present during all voir dire proceedings. *Adanandus v. State*, 866 S.W.2d 210, 216–220 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). But, we do not believe that the *in camera* proceedings of which appellant complains present *voir dire* proceedings within the meaning of Article 33.03. The *in camera* meeting lacked the traditional adversarial elements of a voir dire proceeding. Jackson was not instructed or examined in the traditional sense of a voir dire examination; neither party desired to question her. She was dismissed upon the suggestion, agreement, and by request of both parties without challenge for cause or peremptory challenge.

Both parties and the trial court stated that their purpose in the dismissal was to protect the integrity of the trial proceedings. *Compare Adanandus*, 866 S.W.2d at 217 (a full day of voir dire proceedings were conducted during which eight veniremembers were examined by both parties and three were dismissed for cause by defense, and five were kept as potential jurors.) Under these facts appellant's reliance on Article 33.03 and *Adanandus* is misplaced. Article 33.03 neither purports to govern nor was intended to govern the peculiar situation which arose in this case.

■ Similarly, we are convinced that the *in camera* meeting cannot be accurately described as a pre-trial *proceeding* within the meaning of Article 28.01, which mandates appellant's presence at all pretrial proceedings. In *Riggall v. State*, 590 S.W.2d 460, 461 (Tex.Crim.App.1979), an order overruling Riggall's motion to dismiss stated that the motion had been heard on a specified day, and recited findings of fact and conclusions of law. We held that the entry of an order, along with the recitations indicating that there had been some adversarial hearing on the matter from which the court made conclusions of fact and law, constituted a *proceeding* under Article 28.01.[2] *Id.* By contrast, in *Malcom v. State*, 628 S.W.2d 790, 792 (Tex.Crim.App.1982), we held that because the record was devoid of any evidence that some type of adversarial hearing was held which led to findings-of-fact and conclusions-of-law supporting the granting or overruling of a pleading, it contained no evidence of a *proceeding* within the meaning of Article 28.01. Malcom's motion had been overruled by a mere notation on the docket sheet. *Id.* at 792.

■ Again, we note that the situation confronting the parties in this case was most unusual. Realizing that she needed to protect appellant's, the State's, and the venire's interests, Judge Kent called an *in camera* meeting to apprise the parties of the incident and to develop a strategy to deal with the problem of the telephone call without conducting a public trial-within-a-trial or other-

---

2. In fact there appears to have been no actual hearing as neither Riggall nor his counsel was present when the trial court heard his motion and entered its order.

wise creating a public scandal which would jeopardize the integrity of the trial. The parties themselves raised the issue of what to do about Jackson, and they, not the court, suggested the best resolution of the issue was an agreement to excuse her. While initially showing some misgiving about this solution, Judge Kent ultimately consented to dismiss Jackson. When informed of this resolution of the problem, appellant consented in open court.[3] As with Article 33.03, we are convinced that the *in camera* meeting, during which Jackson's dismissal was suggested by and agreed to by the two parties, was not a proceeding under the governance of Article 28.01. The resolution of the Jackson issue was the result of negotiation not of an adversarial proceeding. The resolution was one to which the trial court consented, not one which it ordered. Thus, the proceeding of which appellant complains was not within the scope of Article 28.01.[4] **Appellant's first and second points of error are overruled.**

■ In points three, four, and five, appellant alleges and argues together various grounds for reversal each of which is premised on his assertion that murder committed in the course of burglary of a vehicle is not a capital offense. Tex.Penal Code §§ 19.03(a)(2) and 30.04.[5] Assuming for argument's sake that appellant is correct and that capital murder as defined in section 19.03(a)(2) excludes burglary of a vehicle, upon careful review of the entire record, we find that appellant presents no reversible error. The alleged errors are ultimately harmless because the jury also unanimously convicted appellant of capital murder in the course of robbery.

The verdict form, in three separate paragraphs, allowed the jury to find appellant guilty of capital murder in the course of robbery *and* burglary of a vehicle, or of capital murder in the course of robbery, or of capital murder in the course of burglary of a vehicle. It was under the first paragraph that the jury found appellant guilty, stating:

> WE, THE JURY, find the Defendant, STACEY LAMONT LAWTON, GUILTY, of Capital Murder, that is murder committed in the course of committing robbery *and* burglary of a vehicle, as charged in the indictment.

(emphasis added). Pursuant to the indictment and the evidence presented during the trial, the trial court instructed the jury with both of the alternate theories of capital murder alleged in the indictment. In its charge, the trial court instructed the jury that if they *unanimously* agreed, they could find appellant guilty of capital murder in the course of robbery, and in the alternative, that if they *unanimously* agreed, they could find appellant guilty of capital murder in the course of burglary of a vehicle. The jury was required, therefore, to unanimously agree that appellant was guilty under the robbery theory or unanimously agree that he was guilty under the burglary of a vehicle theory, but they could not split their vote and simply find appellant guilty of capital murder. Under this record, the jury's verdict can only mean that the jury unanimously found appellant guilty of capital murder in the course of robbery in addition to unanimously finding him guilty of capital murder in the course of burglary of a vehicle. Having found appellant guilty of capital murder in course of robbery, even if murder in the course of

---

**3.** He was then informed by the court of its intent to have the telephone numbers of the calls placed by appellant recorded, and asked if he had any objection to that order. He personally agreed to this and the trial court entered its order in this regard.

**4.** We are also convinced that error if any was harmless beyond a reasonable doubt. Appellant's assistance during the meeting was not needed in order to further his defense. Since appellant's presence did not bear a "reasonably substantial relationship to the opportunity to defend," no harm resulted of his absence. *Adanandus,* 866 S.W.2d at 219. In conjunction, we

conclude beyond a reasonable doubt that appellant's absence from the meeting made no contribution to his conviction or punishment. *Id;* Tex. R.App.P. 81(b)(2).

**5.** In point three appellant alleges reversible error in that the verdict was a nullity not authorized by Texas law. In point four appellant argues that the trial court erred in failing to quash a flawed indictment. In point five appellant alleges that the imposition of capital punishment for a murder committed in the course of burglary of a vehicle is cruel and unusual punishment under the Eighth and Fourteenth Amendments of the federal constitution.

burglary of a vehicle is not a capital offense, appellant's conviction and sentence would remain unaffected. Under these circumstances, appellant alleges no error upon which any remedy can be granted.

Appellant cites *Cumbie v. State*, 578 S.W.2d 732, 735 (Tex.Crim.App.1979), for the proposition that a jury charge is fundamentally defective and requires reversal when the charge authorizes conviction for conduct which is not an offense, as well as for conduct which is an offense. Our reading of *Cumbie* and its progeny does not support appellant's contention. Moreover, appellant's argument ignores the fact that the aspect of *Cumbie* requiring automatic reversal upon the finding of certain charge error was overruled in *Almanza v. State*, 686 S.W.2d 157, 171–174 (Tex.Crim.App.1984). Under *Almanza*, a determination of whether reversible error exists in a jury charge requires a case-by-case analysis, and the error must have prejudiced appellant. *Id.; Daniels v. State*, 754 S.W.2d 214, (Tex.Crim.App.1988); *Lawrence v. State*, 700 S.W.2d 208 (Tex.Crim.App.1985). From the record, appellant cannot show prejudice arising from the alleged error.

 Similarly, appellant cannot show harm arising from the alleged indictment error or the court's failure to quash the indictment. The purpose of an indictment is "to give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment." *Lehman v. State*, 792 S.W.2d 82, 84–85 (Tex.Crim.App.1990); Arts. 21.11 and 21.04. A conviction can never rest upon conduct which is not a criminal offense, or in whole or in part upon conduct not alleged in an indictment. *Id.* But neither of these situations is present in appellant's case. Appellant's case presents the situation where the State pleads alternate theories of the same offense but one of theories is flawed. The State is allowed to plead all alternative theories of the offense which the evidence may ultimately prove; that is, it is allowed to anticipate variances in the proof by pleading

alternative "manner and means" in the conjunctive when proof of any one theory of the offense will support a guilty verdict. *Id.* When the State pleads alternate theories of the same offense, it is not required to prove guilt under all of the theories alleged; proof of guilt under one theory of the offense will suffice for conviction. *Id.* Applying these principles to appellant's case, the record reveals that the indictment provided him with notice that he must prepare to defend himself against the charge of capital murder under the alternative theories of robbery and burglary of a vehicle, each arising from the same criminal conduct. The record also shows that the State presented sufficient evidence to convict appellant under the robbery theory of the offense, and that the jury in fact unanimously convicted appellant of capital murder in the course of robbery. Under these facts, that the trial court potentially erred in failing to quash the indictment because it contained an allegedly erroneous alternative theory of the offense has no practical effect on the outcome of the case. In providing appellant with notice of the robbery theory under which he was actually convicted, the indictment fulfilled its function of providing appellant with notice of the charges against him.[6] Art. 21.24(c).

In short, any error alleged was harmless under the particular facts of this case. **We must, therefore, overrule appellant's third, fourth, and fifth points of error.**

 Appellant's sixth point of error voices his contention that the evidence was insufficient to establish that he murdered the victim in the course of robbery. Appellant argues the evidence was insufficient to support a finding that the murder was committed "with the intent to obtain or maintain control over property," Tex.Penal code § 29.02(a), because

> ... the evidence supports only one reasonable conclusion: Appellant and his accomplices had unsuccessfully completed their attempted theft of personal property in the vehicles and were walking toward their

---

6. Appellant alleges that he was hampered in preparing a defense by the distraction of the burglary of a vehicle theory of the offense. But, in light of the particular facts of this case, this argument is most unpersuasive; the gravamen of both theories of the offense is identical, i.e., appellant murdered the victim in the course of theft.

trucks when Tommy Featherston shut the toolbox inside the back of his truck. The noise apparently prompted appellant and Karlos Fields to shoot at Price.

In short, appellant argues that because the murder was committed after he abandoned his attempted robbery, he did not have the requisite intent to control property when he shot the victim. Appellant admits that *White v. State*, 671 S.W.2d 40, (Tex.Crim.App.1984), undermines his arguments. *See also Ulloa v. State*, 570 S.W.2d 954 (Tex.Crim.App. 1978); *Lightner v. State*, 535 S.W.2d 176 (Tex.Crim.App.1976).

■ In *White* we held the "intent to obtain or maintain control of the property" deals with the robber's state of mind regarding the theft or attempted theft, and not the assaultive component of robbery. 671 S.W.2d at 42. There is no requirement that appellant retain the intent to control property when the assaultive act is committed; the required violence may occur after the offender has abandoned the theft and is escaping. *Id.*

As appellant concedes, the evidence in this case established that the assaultive act occurred immediately after the attempted theft, as appellant was attempting to escape. As we have explained, it is irrelevant that appellant's control of the property had been thwarted and that he may have abandoned the theft component at the time of his assaultive act. Having conceded that the evidence is sufficient to establish each of the elements of robbery, appellant defeats his own contention that the evidence was insufficient to establish the underlying offense of robbery. **Appellant's sixth point of error is overruled.**

■ In point seven appellant complains that the trial court reversibly erred by admitting extraneous offense evidence during the guilt/innocence phase of his trial.

Appellant complains generally of the court's admission of numerous witnesses' testimony establishing that throughout the night hours immediately preceding the capital murder, appellant and his accomplices had burglarized various vehicles in furtherance of a planned conspiracy.[7] According to the record, the trial court specifically stated that after carefully considering appellant's objections to the evidence, it concluded that the evidence was admissible under Rule 404(b). Tex.R.Crim.Evid.[8] The trial court further held that it had considered evidence of each burglary individually and determined for each offense admitted that it was more probative than prejudicial. Tex.R.Crim.Evid. 403. On appellate review we defer to the trial court's decision and overrule only upon a finding that the decision was outside the bounds of reasonable disagreement. *Rogers v. State*, 853 S.W.2d 29, 32 (Tex.Crim.App. 1993).

Appellant concedes that the evidence of the crime spree immediately preceding the offense under trial has some relevance to the issue of whether appellant was guilty of capital murder in that it tended to prove that appellant intended to commit theft when he burglarized the vehicles parked in front of the victim's home. But, appellant argues that other evidence established these facts in a far less prejudicial manner and thus, that the probative value of the extraneous offense evidence was outweighed by its prejudicial effect. Tex.R.Crim.Evid. 403.

■ Appellant downplays the importance of the crime spree evidence for building an accurate understanding of what occurred during the offense. The evidence established that when appellant shot the victim he did not do so as an unplanned response but as part of a premeditated plan. Appellant and his accomplices conspired to burglarize cars, which they correctly anticipated would con-

---

7. We note that appellant's argument is poorly, if not inadequately, briefed. Appellant does not complain of each instance individually. We address appellant's argument as it is briefed. That is, as a general complaint about a whole category of evidence and not as a complaint of each of the instances within the category.

8. Rule 404(b) states in pertinent part that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

tain many Christmas gifts. This plan had been carried out in the course of the night. Appellant's role in this conspiracy was to stand as an armed guard and if necessary, kill anyone who jeopardized their criminal endeavor. The evidence of the night's crime spree provided the context in which the murder occurred. *Smith v. State*, 898 S.W.2d 838 (Tex.Crim.App.1995) (The evidence of robbery immediately antecedent to murder established Smith's motive and intent in killing the victim; he needed the victim's truck to escape from the foiled robbery); Tex. R.Crim.Evid. 404(b). The crime spree evidence also served to corroborate the accomplice testimony.[9] Art. 38.14; *See, Long v. State*, 823 S.W.2d 259, 273 (Tex.Crim.App. 1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992) (evidence of extraneous offense corroborated appellant's confessions wherein he detailed the manner in which each murder was committed).

Under these facts we must disagree with appellant's assertion that the probative value of the evidence was minimal compared to its prejudicial nature. The evidence is highly prejudicial to appellant in that it is highly probative of his motive, and premeditated role in the murder, but this is not the type of prejudice which concerns Rule 403, due course of law, or due process. We cannot hold that the trial court was outside the bounds of reasonable disagreement when it admitted the evidence of the extraneous offenses. **Appellant's seventh point of error is overruled.**

 In point of error eight, appellant alleges that the trial court erred in permitting Detective Hukill to testify about the hearsay statements of T. Featherston, the son-in-law of the victim and eye-witness to the murder.[10] The court admitted the out-of-

court statement as an excited utterance exception to the hearsay rule which states: "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. Tex.R.Crim.Evid. 803(2). Appellant argues that because Featherston's declaration was made in response to police questioning about an hour after the murder, it was neither spontaneous nor under the excitement of the event.

 The critical factor in determining when a statement is an excited utterance under Rule 803(2) "is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim. App.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). The time elapsed between the occurrence of the event and the utterance is only one factor considered in determining the admissibility of the hearsay statement. *Id.* That the declaration was a response to questions is likewise only one factor to be considered and does not alone render the statement inadmissible. *Id.* The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994) *See* Tex.R.Crim.Evid., Rule 801 *et seq.*

The record supports the trial court's decision to admit Featherston's out-of-court statement. Detective Hukill testified that Featherston was still "excited and upset" by the events leading to the victim's death. And according to the record, Featherston was interviewed at the hospital to which the victim had been taken shortly after the event; apparently, the victim's death was not

---

9. Appellant attacks in particular the testimony of C. Ryan, who testified that early on the morning of offense, she had seen the two trucks which appellant and his accomplices were using in their crime spree parked outside her home. She testified that an unidentified male, whom she could not positively identify as appellant, was sitting in a white pickup truck, pointing a long barrelled gun at her window. This testimony corroborated accomplice Carlos Black's testimony that at each crime scene appellant sat in the white pickup brandishing a shotgun and was

ready to "bust on anyone" who might interfere with the burglary in progress. We unequivocally hold that extraneous offense evidence is admissible under Rule 404(b) for the purpose of corroboration under Article 38.14.

10. About an hour after the incident, Hukill had questioned Featherston about who had shot the victim. In general terms, Featherston identified the shooter as the individual standing by the White truck.

yet certain when Featherston made his statements. Within the hour of which appellant complains, Featherston had been awakened by burglars in the dark, morning hours of Christmas Eve, witnessed the shooting of his future father-in-law, feared for his own life, informed his fiancee that her father had been gunned down, and then accompanied his then hysterical fiancee and her dying father to the hospital. Considering the magnitude of the crime, capital murder, and the rapid sequence of staggering events culminating in victim's death, we must reject appellant's assertion that the elapse of one hour categorically removed Featherston's statement from the excited utterance exception to hearsay. The trial court did not abuse its discretion; **Appellant's eighth point of error is overruled.**

■ Appellant's ninth point of error complains that "the prosecution repeatedly made improper and prejudicial arguments during its opening and closing arguments." Appellant does not complain of any specific statement; "rather than attempt to catalogue all of those improper arguments, appellant simply directs this Court to the relevant portions of the record." [11] Appellant leaves us to find error and argue his case for him; this is inadequate briefing, and as such, it presents nothing for our review. *Garcia v. State,* 887 S.W.2d 862, 871 (Tex.Crim.App.1994); Tex. R.App.P. 74(f). **Appellant's ninth point of error is overruled.**

■ In his tenth point of error appellant argues that the array called to jury duty in his case was called in violation of § 62.001(a)(2) of the Texas Government Code. Appellant is probably correct.

■ Section 62.001 provides:
(a) The jury wheel *must* be reconstituted by using, as the source:
(1) the names of all persons on the current voter registration lists from all the precincts in the county; and
(2) all names on a current list to be furnished by the Department of Public Safety, showing the citizens of the county who

hold a valid Texas driver's license and the citizens of the county, other than persons who are disqualified from jury service, who hold a valid personal identification card or certificate issued by the department.

This statute became effective on January 1, 1992. In a pre-trial hearing, appellant established that in his case the prospective jurors were summoned from a list of all registered voters and those who have been issued or renewed driver's licenses or identification cards *since January 1, 1992.* Since the plain meaning of "the citizens of the county who hold" includes *all* of the citizens who hold driver's licenses or identification cards, appellant's array was probably called in violation of § 62.001(a)(2). But, "noncompliance with the mode and manner of service or summoning the venire constitutes error only when injury has been shown." *Lewis v. State,* 815 S.W.2d 560, 563–564 (Tex.Crim. App.1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992), [quoting *Miers v. State,* 157 Tex.Cr.R. 572, 251 S.W.2d 404, 409 (1952) ]. To succeed, a challenge to a criminal conviction based upon noncompliance with § 62.001 must establish that the noncompliance actually compromised the fairness of the trial. *Id.* Appellant makes no allegations that the fairness of his trial was compromised, and he does not establish any actual prejudice caused by the noncompliance with 62.001(a). To the contrary, the record reflects that the array was summoned from a fair cross-section of the county's population. Without a showing of prejudice, we cannot hold that the trial court abused its discretion in overruling appellant's motion. **His tenth point of error is overruled.**

■ In his eleventh point of error, appellant challenges the constitutionality of Article 37.071 § 2(b)(2) on grounds that it permits the jury to sentence a defendant to death for merely anticipating that a human life might be taken. Appellant argues that under *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) and *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), anticipation that death will result

---

11. Our review of the record reveals that the trial court sustained various objections during the State's arguments, but the trial court instructed the jury in each instance to disregard the remarks.

is an insufficient *mens rea* under the Eighth Amendment of the federal constitution for the imposition of death.

Article 37.071 § 2(b)(2) provides that if the guilt/innocence charge contained a parties charge under §§ 7.01 and 7.02 of the penal code, the jury shall be asked in the sentencing charge

> whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another *or anticipated that a human life would be taken.*

(emphasis added).

The *Enmund* court held that the Eighth Amendment of the United States Constitution proscribes the execution of a individual who, albeit acting in the commission of a crime with others, does not himself intend that murder be committed and whose participation in the offense is attenuated. 458 U.S. at 790–791, 102 S.Ct. at 3373–3374. The *Tison* court held that the federal constitution does not proscribe the execution of a major participant in an offense who possesses "reckless indifference" towards the murder committed by parties acting with him in a crime. 481 U.S. at 158, 107 S.Ct. at 1688. Neither *Enmund* nor *Tison* are directly applicable to Article 37.071.

 Under our death penalty scheme, in order to convict an accused of capital murder as a primary actor, the jury must find that he intentionally committed the murder in the course of the underlying felony. Tex.Penal Code § 19.03(a)(2). And, before the accused may be convicted of capital murder for the conduct of another, it must be established, beyond a reasonable doubt, that the accused harbored a specific "intent to promote or assist the commission of" the intentional murder. *Tucker v. State,* 771 S.W.2d 523, 530 (Tex.Crim.App.1988), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989); Tex.Penal Code § 7.02(a)(2). In short, that the jury may have found that appellant only anticipated that death would result under Article 37.071 is inconsequential to *Enmund* and *Tison* concerns; the jury had already found that appellant intended to at least promote or assist in the commission

of *an intentional murder.* **Appellant's eleventh point of error is overruled.**

 In his twelfth point of error, appellant alleges that the definition of mitigating evidence in Article 37.071 § 2(f)(4) is constitutionally infirm because it excludes evidence of defendant's character, history, or circumstances of the crime. He concedes that the special issue itself, Article 37.071 § 2(e), is not constitutionally infirm.

Upon answering the first two special issues affirmatively, Article 37.071 § 2(e) mandates that the jury determine

> Whether, *taking into consideration all of the evidence,* including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

(emphasis added). Article 37.071 § 2(f)(4) requires the jury be instructed that each juror

> shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.

We do not believe that these definitions singularly or in combination are in conflict with the United States Constitution. *Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 605–06, 98 S.Ct. 2954, 2965–66, 57 L.Ed.2d 973 (1978). In *Penry v. Lynaugh,* the Supreme Court stated,

> Underlying *Lockett* and *Eddings* is the principle that *punishment should be directly related to the personal culpability of the criminal defendant.* If the sentencer is to make an individualized assessment of the appropriateness of the death penalty, "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." ... "Thus, the

sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character and crime."

(Emphasis added; citation omitted) 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989). Holding that our statutory definition of mitigating evidence is congruent with that of the United States Supreme Court, **we overrule appellant's twelfth point of error.**

■ Appellant contends in his thirteenth point that the trial court violated the guarantee against cruel and unusual punishment and denied him due process under the United States Constitution when it denied his motion to inform the jury that a life sentence for capital murder mandates a minimum thirty-five year imprisonment before the accused is eligible for parole. Article 42.18 § 8(b)(2).

In *Smith*, 898 S.W.2d at 847–853, *cf.* and *Willingham v. State*, 897 S.W.2d 351, 358–359 (Tex.Crim.App.1995), *cf.*, we recently rejected arguments that the failure to inform a capital murder jury that a life sentence carries a mandatory minimum incarceration, violates the United States Constitution. Though appellant raises various arguments, neither the law nor facts of his case remove it from the control of *Smith* and *Willingham*. Thus, reaffirming our decision that the matter of parole eligibility, including mandatory minimums, is not a proper consideration for the jury's sentencing deliberations, we refer appellant to our holding in *Smith* and *Willingham* and, we hold that the trial court's refusal to charge the jury on the effects of parole in this case was not error. **Appellant's thirteenth point is overruled.**

■ In point fourteen appellant alleges that the evidence was insufficient to support the jury's negative answer to the mitigation special issue.[12] Art. 37.071 § 2(e). We have held, and for the following reasons must here reaffirm, that an appellate sufficiency review of a negative verdict regarding the mitigation special issue is neither constitutionally required nor possible under our current law. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871,

79 L.Ed.2d 29 (1984); *Hughes v. State*, 897 S.W.2d 285, 294 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995); *Colella v. State*, 908 S.W.2d 437, 448 (Tex.Crim.App.1995).

■ As already noted, Article 37.071 § 2(f)(4) fluidly defines "mitigating evidence" to be "evidence *that a juror might regard* as reducing the defendant's moral blameworthiness." (Emphasis added). Evidence is not *per se* mitigating; each juror individually determines what evidence, if any, mitigates against the just imposition of the death sentence. *Banda v. State*, 890 S.W.2d 42, 54 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Johnson v. State*, 773 S.W.2d 322, 324 (Tex. Crim.App.1989), *affirmed in part, Johnson v. Texas*, —— U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). Moreover, in reviewing for sufficiency, we recognize that the "jurors are the exclusive judges of the facts," *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994), and we do not reweigh the credibility or weight of the evidence but ask only whether the evidence exists to support the jury's finding. *E.g. Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560; *Chambers v. State*, 866 S.W.2d 9, 15 (Tex. Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). When the evidence both supports and conflicts with the jury's verdict, we must assume that the factfinder resolved the conflicts in favor of the verdict reached. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Thus, to conduct a review of mitigating evidence we would have to sit as an omniscient and omnipotent thirteenth juror, assessing the mitigating effect of evidence and assigning particular evidence greater weight than the jury apparently did. We decline to declare any evidence mitigating as a matter of law or to usurp the jury's role of discerning the credibility and weight of evidence. **Appellant's fourteenth point of error is overruled.**

■ In point fifteen appellant alleges that Article 37.071 is unconstitutional because the mitigation special issue eludes a meaningful appellate review of the sufficien-

---

**12.** Appellant actually says "affirmative" answer, but we will assume that he meant "negative" since that is how the jury in fact answered the special issue.

cy of the mitigating evidence. We concede to appellant's assertion that under current law, it is impossible to conduct a sufficiency review of the jury's answer to the mitigation special issue. But, this does not render our capital punishment scheme unconstitutional.

■ First, we note that a meaningful review of the jury's determination that the penalty of death is appropriate is not precluded. It is possible, and we do review the sufficiency of evidence regarding special issues under Article 37.071 § 2(b). It is only the mitigation aspect of our capital murder scheme which is unreviewable for sufficiency of the evidence. Accordingly, we note that the United States Constitution does not require a sufficiency review of the jury's decision regarding mitigation. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Hughes*, 897 S.W.2d at 294. **Appellant's fifteenth point of error is overruled.**

■ In his sixteenth point, appellant asserts that Article 37.071 is facially unconstitutional because Article 44.251(a) *requires* a sufficiency review of answers to the mitigation special issue. For purposes of this argument, appellant concedes that such a sufficiency review is impossible. We concede that Article 44.251(a) is problematic.[13] However, appellant's bald assertion that Article 37.071 is unconstitutional because Article 44.251(a) is unworkable is puzzling and ultimately untenable. Why or how a flaw in Article 44.251(a) affects the constitutionality of Article 37.071 § 2(e) is not obvious to us. To the contrary, we are convinced that the flaw in Article 44.251(a) is unimportant to the constitutionality of our capital punishment scheme in general and to the constitutionality of Article 37.071 in particular. So long as the jury is not precluded from hearing and effectuating mitigating evidence, our capital

punishment scheme is constitutional regardless of whether appellate review of the jury's mitigation verdict is possible. *Pulley*, 465 U.S. at 37, 104 S.Ct. at 872–73; *Hughes*, 897 S.W.2d at 294. **Appellant's sixteenth point of error is overruled.**

■ In point of error seventeen appellant alleges that Article 37.071 § 2(e) is facially unconstitutional because it does not assign the burden of proof as to aggravating or to mitigating circumstances. We are confused by appellant's argument with respect to aggravating evidence under Article 37.071 § (2)(e) since it does not ask the jury to consider aggravating evidence. *Compare* Article 37.071 § 2(c) (expressly placing the burden of proof regarding the "aggravating" circumstances under Article 37.071 § 2(b) on the State). Appellant's argument in this regard is meritless.

We concede that the Texas legislature has not assigned a burden of proof regarding mitigating evidence. *Barnes v. State*, 876 S.W.2d 316, 330 (Tex.Crim.App.), *cert. denied*, — U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1995). We also concede that the burden is implicitly placed upon appellant to produce and persuade the jury that circumstances exist which mitigate against the imposition of death in his case. Appellant complains that this violates the federal constitution. However, we are unaware of any constitutional requirement that the burden of proof regarding mitigating evidence be placed on either party, and to the extent that the burden is on appellant, we note that it is not unconstitutional to so place the burden. *Walton v. Arizona*, 497 U.S. 639, 649–651, 110 S.Ct. 3047, 3054–3056, 111 L.Ed.2d 511 (1990); *Barnes*, 876 S.W.2d at 330.

■ Appellant also argues, citing *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726,

---

**13.** On its face, Article 44.251(a) implies that what we have held to be unnecessary, if not impossible, is possible:

> (a) The court of criminal appeals shall reform a sentence of death to a sentence of confinement in the institutional division of the Texas Department of Criminal Justice for life *if the court finds that there is insufficient evidence to support ... a negative answer to an issue submitted to a jury under Article 37.071(e) of this code.*

(emphasis added). While, usually we are required to construe statutes according to their plain meaning, *Boykin v. State*, 818 S.W.2d 782 (Tex.Crim.App.1991), such a construction is not required where it would lead to absurd results. *Id.* In this case the statute's plain meaning leads to logical absurdity and legal impossibility. We have already held that as a matter of law, we cannot review the jury's answer to the Article 37.071 § 2(e). Article 44.251(a) is unworkable.

33 L.Ed.2d 346 (1972), that the failure of the legislature to assign clear burdens of production and proof regarding Article 37.071 § 2(e) creates an unconstitutional uncertainty in our capital punishment scheme. Appellant's argument confuses the federal constitution's demand that death eligibility be narrowed to a reasonably clear and well defined group of offenses, as in *Furman*, with its demand that individual jurors be allowed to make individualized, well reasoned, moral responses in determining whether factors exist which mitigate against the imposition of the death sentence, as in *Penry* 492 U.S. at 302, 109 S.Ct. at 2937–2938 (1989). *See Tuilaepa v. California*, —— U.S. ——, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (discussing the constitution's apparently conflicting demands). The federal constitution's requirement of clarity in defining death eligibility is not applicable to provisions which allow the jury to consider and give effect to mitigating evidence. *Gregg v. Georgia*, 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976). In short, *Furman* dealt with the untrammeled discretion to impose the death sentence, but the untrammeled discretion to afford life to a death eligible defendant does not offend the United States Constitution.

The failure to define the burden of production and persuasion regarding Article 37.071 § 2(e) does not render it or our capital punishment scheme constitutionally infirm. **Point of error seventeen is overruled.**

■ In points of error eighteen and nineteen, appellant argues that capital punishment is violative of the United States and Texas Constitutions. Appellant *adopts* the arguments of Justice Blackmun's dissenting opinion in *Callins v. Collins*, —— U.S. ——, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994) in which Justice Blackmun concluded that the competing requirements of the federal constitution as expressed in *Furman* and *Penry* are ultimately irreconcilable. In response, we refer appellant to the more authoritative holdings of *Gregg*, 428 U.S. at 153, 96 S.Ct. at 2915–2916, *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and more recently *Tuilaepa*, —— U.S. ——, 114 S.Ct. 2630, reconciling the apparent conflicts of *Furman* and *Penry*. **We adopt these holdings and overrule appellant's eighteenth point of error.**

■ Under his state constitutional claim, appellant asserts that it is "particularly noteworthy" that where the federal constitution proscribes "cruel *and* unusual" punishment, the Texas constitution proscribes "cruel *or* unusual" punishment. The noteworthiness of the distinction is not self-evident to us. Appellant offers no arguments or authority explaining why the difference is noteworthy; his briefing regarding this point is inadequate. To adequately brief a state constitutional issue appellant must proffer specific arguments and authorities supporting his contentions under the state constitution. Otherwise his contentions are inadequately briefed. *Narvaiz v. State*, 840 S.W.2d 415, 430 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993); *Robinson v. State*, 851 S.W.2d 216, 222 n. 4 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *Morehead v. State*, 807 S.W.2d 577, 579 n. 1 (Tex.Crim.App.1991); Tex.R.App.Proc. 74 and 210. **Appellant's nineteenth point of error is overruled.**

■ In point of error twenty, appellant alleges that the instructions given pursuant to Article 37.071 § 2(d) and Article 37.071 § 2(f) are violative of the United States Constitution under *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) and *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). These cases hold that the United States constitution is offended by requirements that mitigating evidence may be given effect only by the unanimous vote of the jury. But, unlike the schemes in *McKoy* and *Mills*, Article 37.071 does not require the unanimous agreement of the jury to give effect to mitigating circumstances. To the contrary, in our capital punishment scheme, a single juror who believes that mitigating circumstances exist effectuates his belief by answering Article 37.071 § 2(e) affirmatively. If the jury is hung eleven to one, the defendant will be sentenced to life imprisonment. Article 37.071 § 2(f).

Moreover, while it is true that the jury is instructed that they may not answer any of the special issues in a manner that would result in a life sentence unless ten jurors agree to that answer, this instruction follows the instruction that the jury may not answer any of the special issues in a manner resulting in capital punishment unless the verdict is unanimous.[14] Under these facts, appellant's argument that jurors will be misled lacks merit; every juror knows that capital punishment cannot be imposed without the unanimous agreement of the jury on all three special issues. The jury is not informed of the consequences of a hung jury, but each juror will know that without his or her vote the death sentence cannot be imposed. **Appellant's twentieth point of error is overruled.**

■ In point of error twenty-one, appellant argues that the provision of Article 37.071 § 2(g), proscribing that juries be informed that a hung jury will result in a life sentence, is unconstitutional. In *Davis v. State*, 782 S.W.2d 211, 222 (Tex.Crim.App. 1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990) we held that the prohibition against informing the jury of the effects of a hung jury is not unconstitutional. Appellant fails to distinguish his case from *Davis*. **His twenty-first point is overruled.**

■ In point of error twenty-two, appellant argues that our capital punishment scheme violates the Eighth and Fourteenth Amendments to the United States Constitution because it imposes the death sentence erratically and arbitrarily in violation of the Equal Protection Clause. Appellant argues that *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), in which the United States Supreme Court upheld our capital punishment scheme, is no longer controlling because the legislative amendments to Article 37.071 along with *ad hoc*, extra-

statutory mitigation instructions added by trial courts, have created a patch-work quilt under which capital murder defendants are arbitrarily and erratically subjected to the death penalty. Appellant incorrectly asserts that a single hypothetical defendant could be subjected to one of seven different capital sentencing schemes and argues that this "is quintessential arbitrariness—the very type condemned in *Furman*."

It is true that currently we have more than one capital sentencing procedure in effect. The procedure applicable to a particular defendant depends on the date of offense. All those committing capital murder on the same day are subject to the same procedures. *See* Articles 37.071 and 37.0711. The choice is not erratic or arbitrary but well defined. *See Powell v. State*, 897 S.W.2d 307 (Tex.Crim. App.1994) (reversed because trial court imposed death using version of Article 37.071 not yet in effect and not authorized by law). Appellant also misrepresents constitutional law.

■ That the amendments to our capital punishment statutes have created slightly different schemes for imposing the death sentence does not create the untrammeled discretion which offends the United States Constitution. The United States Constitution does not proscribe the amendment of capital punishment statutes. Likewise, appellant misinterprets the law in his assertion that the various mitigating instructions fashioned by trial courts also violate *Furman*. The constitutional proscriptions against the arbitrary and erratic imposition of the death sentence do not apply to decisions against the imposition of the death sentence; trial courts are free to charge the jury with mitigating instructions where they discern that such instructions are constitutionally required. *See* point of error seventeen, *supra*.

---

14. Appellant presents the scenario in which four jurors believe that the first special issue should be answered negatively, and then four different jurors believe that the second special issue should be answered negatively, and then the remaining four jurors believe the mitigation special issue would be answered affirmatively. Appellant asserts that if at each issue, the individual jurors were bullied into voting with the majority, the result would be a death sentence where everyone on the jury believed it to be an inappropriate punishment. Appellant's argument that the proscription against informing the jury of the consequences of a deadlocked jury is unconstitutional because it leads to a "majority rule mentality," whatever that might be, is best addressed under the subsequent point of error.

██ Moreover, appellant presents no equal protection violation. *Sonnier v. State,* 913 S.W.2d 511, 521 (Tex.Crim.App.1995). The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated shall be treated alike" under the law. *Id.* [quoting, *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) ]. Because those committing the same offense on the same day are subject to the same statutory scheme, similarly situated defendants are similarly treated for purposes of the Fourteenth Amendment. *Sonnier, supra; See also Dobbert v. Florida,* 432 U.S. 282, 302, 97 S.Ct. 2290, 2302–2303, 53 L.Ed.2d 344 (1977); *cf. Dinkins v. State,* 894 S.W.2d 330, 341 (Tex.Crim.App.1995). **Appellant's twenty-second point of error is overruled.**

In point of error twenty-three, appellant raises the same arguments which he raised in point twenty-two under Article I, Sec. 13 of the Texas Constitution (prohibiting cruel or unusual punishment), and Article I, Sec. 3 (guaranteeing equal protection of law). In addition to the arguments made under the federal constitution, appellant argues that the protections of the Texas Constitution are broader, but he proffers no argument or authority specific to the Texas Constitution. Appellant fails to explain how the protections of the Texas Constitution differ from those guaranteed by the federal constitution. Without such argument or authority, appellant's point is inadequately briefed. *Narvaiz,* 840 S.W.2d 415; *Robinson,* 851 S.W.2d at 222 n. 4; *Morehead,* 807 S.W.2d at 579 n. 1; Tex.R.App.Proc. 74 and 210.[15] **Appellant's twenty-third point of error is overruled.**

██ In his twenty-fourth point of error, appellant alleges that the mitigation special issue renders Article 37.071 and the entire Texas capital punishment scheme unconstitutional. Appellant argues that the mitigating special issue permits untrammeled discretion in sentencing which runs afoul of the constitutional requirement that death not be arbitrarily and erratically imposed. *Furman,* 408 U.S. at 238, 92 S.Ct. at 2727. Appellant's arguments suffer from the same fundamental misunderstanding of *Furman* which we have already addressed. *See* points seventeen and twenty-two, *supra.* We reiterate, *Furman* deals with the untrammeled discretion to impose the death penalty not with the decision that circumstances exist which mitigate against the imposition of the death penalty. *Gregg,* 428 U.S. at 199, 96 S.Ct. at 2937; *Tuilaepa,* —— U.S. ——, 114 S.Ct. 2630. **Point of error twenty-four is overruled.**

██ In point of error twenty-five appellant alleges that the trial court violated Article 37.07 § 3(c) by admitting unadjudicated extraneous offenses during the sentencing phase of his trial. Appellant asserts that Article 37.07 § 3(c) forbids admission of unadjudicated extraneous offenses during the sentencing phase of a capital murder trial. Appellant's argument is directly contrary to our holding that Article 37.071, and not Article 37.07, controls the sentencing phase of a capital murder trial. *Gentry v. State,* 770 S.W.2d 780, 792 (Tex.Crim.App.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989); *Rumbaugh v. State,* 589 S.W.2d 414, 418 (Tex.Crim.App.1979). **Appellant's twenty-fifth point of error is overruled.**

██ In point of error twenty-six appellant alleges that the trial court erred in admitting evidence of unadjudicated extraneous offenses during the sentencing phase of his trial. Appellant alleges that the admission of such evidence violates the due process guarantees of the federal constitution. Appellant urges us to overrule well-settled precedent holding that absent unfair surprise, unadjudicated extraneous offenses are admissible during the sentencing phase of capital murder trials. *See Gentry,* 770 S.W.2d at 793; *Rumbaugh,* 629 S.W.2d at 754. Finding no compelling reasons to overrule longstanding precedent, **we overrule appellant's twenty-sixth point.**

---

15. Moreover, to the extent that we have addressed Article I, Section 3, we have rejected arguments that it offers broader protection than the Fourteenth Amendment. *E.g. Rucker v. State,* 170 Tex.Crim. 487, 342 S.W.2d 325 (1961).

In his twenty-seventh point of error appellant alleges that the trial court erred in admitting into evidence the written confession of appellant's accomplice, Carlos Black. Appellant alleges the statement was inadmissible hearsay. Tex.R.Crim.Evid. 802. The State counters that the statement was properly admitted as an out-of-court statement under Rule 801(e), which states

> a statement is not hearsay if ... the declarant testifies at trial ... and is subject to cross-examination concerning the statement, and the statement is ... consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.

According to the record, appellant questioned Carlos Black during cross-examination about the preparations he and the district attorney had undertaken for his trial testimony. Appellant never flatly accused Black of fabricating his testimony with the State's assistance, but it was clearly implied that Black's testimony was influenced by the district attorney's tutelage. Under these facts it is far from clear that the trial court abused its discretion. **Therefore, appellant's twenty-seventh point of error is overruled.**

In his twenty-eighth point, appellant argues that the evidence is insufficient to support the jury's determination that he would commit criminal acts of violence that would constitute a continuing threat to society. Art. 37.071 sec. 2(b)(1). An attack on the sufficiency of the evidence regarding the future dangerousness special issue is reviewed in the light most favorable to the verdict. *Flores v. State,* 871 S.W.2d 714, 715 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 313, 130 L.Ed.2d 276 (1994). If evidence exists which supports the jury's verdict, their decision must be upheld.

According to the record, the evidence indicated that in a well planned spree of vehicle burglaries, appellant stood as an armed guard to protect those committing the burglaries; appellant assured his accomplices that he was willing to kill anyone who attempted to interrupt their crime spree. Indeed, when the victim attempted to interrupt the burglaries, the record indicates that appellant shot him without warning. Dr. Allen, a psychologist, testified through hypotheticals, that in his opinion someone like appellant constituted a continuing threat to society. Police officers testified as to appellant's bad reputation in the community. Reasonable minds could disagree that this evidence supports the jury's verdict beyond a reasonable doubt, but that is not the standard of review; we look only for evidence sufficient to rationally support the jury's verdict without reweighing the evidence ourselves. Finding that the evidence is sufficient to rationally support the jury's verdict, **we overrule appellant's twenty-eighth point of error.**

The judgment of the trial court is affirmed.

BAIRD, J., concurs. Regarding points of error three, four and five, I join the concurring opinion of Judge Maloney. As to point of error eight, I believe the trial judge erred in admitting the hearsay statements. However, I believe the error was cured because the declarant, Featherstone, testified at trial and during his testimony he recounted his conversation to Detective Hukill. I join the remainder of the majority opinion.

CLINTON, J., dissents to the *arguendo* treatment and disposition of points three, four and five. Section 30.02 identifies "burglary" as a discrete offense, serving to protect against intrusion in special *places* where *people* expect to be free from such an intrusion. Sections 30.03 and 30.04 particularly describe "machines" and "vehicles" as subjects. When the Legislature used "burglary" alone in in Section 30.02, it meant what it said. Moreover, murder committed in the course of theft is not capital murder. See slip opinion n. 6.

OVERSTREET, J., not participating.

MALONEY, Judge, concurring.

In points of error three and four appellant claims that murder committed in the course of a burglary of a vehicle does not constitute capital murder under Texas law. In point of error five appellant claims that to permit the imposition of the death penalty for murder committed in the course of a burglary of a

vehicle violates the Eighth and Fourteenth Amendments. The Court does not address the merits of these claims but concludes that error, if any, was harmless since the jury found appellant committed murder in the course of burglary *and* robbery. I join the Court's opinion, but write separately to address the merits of appellant's contentions, to provide some insight to the bench and bar on this subject. Had appellant's conviction been based solely on murder in the course of burglary of a vehicle, I would be compelled to agree with appellant that it could not stand.

A person commits capital murder if he intentionally commits murder

> in the course of committing or attempting to commit kidnapping, *burglary*, robbery, aggravated sexual assault, or arson[.]

Tex.Penal Code Ann. § 19.03(a)(2) (emphasis added). Penal Code Chapter 30, entitled *Burglary and Criminal Trespass*, includes the following offenses:

| | |
|---|---|
| 30.02 | Burglary |
| 30.03 | Burglary of Coin–Operated or Coin Collection Machines |
| 30.04 | Burglary of Vehicles |
| 30.05 | Criminal Trespass |

Appellant argues that only § 30.02 burglary is encompassed within § 19.03. The State reasons that all forms of burglary listed in Chapter 30 satisfy the underlying offense of "burglary" for purposes of § 19.03 because Chapter 30 itself is entitled "Burglary."

> We have previously recognized that
> if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.

*Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991). Only if application of the plain language would lead to absurd results or if the language is not plain but is ambiguous, do we look to extratextual evidence of intent, such as legislative history. *Id.* at 785–86. Because there is ambiguity in section 19.03's use of the term "burglary" when read in view of Chapter 30—the ambiguity being whether "burglary" refers only to the offense of burglary as identified in § 30.02 or whether it refers to all burglary offenses

within Chapter 30—it is appropriate to consider legislative history in order to determine the intent of the legislators at the time of enactment.

Section 19.03 was enacted following the United States Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which struck down the previous Texas capital murder provision as unconstitutional under the Eighth and Fourteenth Amendments. After *Furman,* it was generally agreed that the death penalty should be reserved for a narrow class of persons and be imposed in a manner that avoided unfettered discretion. Chief Justice Burger, joined by Justices Blackmun, Powell, and Rehnquist, dissenting to the Court's opinion and to the concurring opinions in *Furman,* observed that

> legislative bodies may seek to bring their laws into compliance with the Court's ruling by providing standards for juries and judges to follow in determining the sentence in capital cases or by more narrowly defining the crimes for which the penalty is to be imposed.

*Furman,* 408 U.S. at 400–401, 92 S.Ct. at 2809 (Burger, C.J., dissenting). The Supreme Court has since recognized that under *Furman* a provision defining an offense as capital "must ... provide a meaningful basis for distinguishing the few cases in which the death penalty is imposed from the many cases in which it is not." *Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (citing *Furman,* 408 U.S. at 313, 92 S.Ct. at 2764 (White, J., concurring)).

The primary concern of the Texas legislature was to enact a new capital murder provision that would withstand constitutional muster under *Furman* by narrowly defining the circumstances in which a death sentence could be imposed. Testimony from hearings in both the House and Senate reflect a general concern that the offenses included within the definition of capital murder be limited in order to keep the bill within the confines of *Furman.* When originally introduced, House Bill 200 (which, upon passage, became section 19.03) included kidnapping, burglary, robbery, forcible rape, and arson as underly-

ing offenses to capital murder. After public debate on the bill, the subcommittee eliminated all of the underlying offenses with the exception of kidnapping, expressing the belief that the bill would have a better chance of being held constitutional if the circumstances elevating a murder to capital murder were limited.[1] When brought back to the floor, there was discussion about amending the bill to add back certain offenses. One amendment was proposed to add robbery and rape. Another amendment was proposed to add back the offenses originally included—kidnapping, burglary, robbery, forceful rape and arson. The latter floor amendment passed, although several representatives continued to express concerns that they were running a risk of rendering the bill unconstitutional. Representative Robert Maloney, who proposed the floor amendment, expressed his view about the addition of these offenses:

> ... these are all offenses which *guard the private citizen who is at home or in some place minding their own business* and get murdered in the commission of another felony.

Texas House of Representatives, Floor Proceedings on H.B. 200, 63rd Leg., May 8, 1973 (emphasis added). The Senate *rejected a* proposed amendment to make the commitment of *any felony* an underlying offense, believing such a broad provision would render the bill unconstitutional. Texas Senate, Floor Proceedings on H.B. 200, 63rd Leg., Transcript of Tape 93 (May 23, 1973).

1. As explained by the author of the bill, Representative Cobb:
 ... [The subcommittee] had before them all of the other categories, robbery, rape, and any number of other offenses wherein a murder was committed, arson, things of this nature. It was the opinion of the committee—the members of the penal code subcommittee who were dealing with—dealt with this in numerable meetings that to broaden that might very likely render the bill unconstitutional.
 Texas House of Representatives, Floor Proceedings on H.B. 200, May 8, 1973.
2. It is likely that in considering the capital murder provision, the legislators understood "burglary" *as it existed under the 1925 Penal Code.* Under the 1925 Penal Code, Chapter 5 was entitled "Burglary." "Burglary" was defined within that chapter as follows:

It seems clear from a reading of the proceedings relating to House Bill 200 that the legislators wanted to include as underlying offenses violent crimes that impacted private citizens "at home or minding their own business" but did not want to include so many underlying felonies as to endanger the constitutionality of the bill. Justice Brennan had observed in *Furman* that if capital murder is an appropriate punishment only for "extreme" cases, and "[i]f ... petitioner Furman or his crime illustrates the 'extreme,' then nearly all murderers and their murders are also 'extreme.'" *Furman*, 408 U.S. at 294, 92 S.Ct. at 2754 (Brennan, J., concurring).

In drafting our capital murder provision, the legislature was struggling to identify circumstances that would *elevate* a simple intentional murder to a capital offense.[2] It follows that the elevating circumstances would need to be "extreme" or violent in nature. Anything less would not sufficiently render a capital murder defendant more deathworthy than a murder defendant.

Under the Penal Code applicable to appellant, Burglary of Vehicles is defined as a Third Degree felony. However, in 1993, this offense was reduced from a Third Degree felony to a Class A misdemeanor. Acts 1993, 73rd Leg., ch. 900 § 1.01. The offense of Burglary of Coin–Operated or Collection Machines was enacted as a Class A misdemeanor and has remained so.

I cannot believe that the legislators enacting section 19.03 had any intention of permit-

The offense of burglary is constituted by entering a house by force, threats or fraud, at night, or in like manner by entering a house at any time, either day or night, and remaining concealed therein, with the intent in either case of committing a felony or the crime of theft.
Tex.Rev.Civ.Stat.Ann. art. 1389. The other forms of burglary appearing in Chapter 5 (burglary by breaking, burglary of a private residence at night and burglary by explosives) were simply expansions on that definition. All burglary in Chapter 5 incorporated the concept of entering a house or residence. Chapter 5 was ultimately repealed and replaced with Chapter 30, effective at the same time the capital murder provision was made effective, with the passage of the 1973 Penal Code.

564

ting a misdemeanor to serve as the underlying offense to capital murder. Even the most sweeping of amendments that was rejected in the Senate—the amendment proposing that all felonies could serve as the underlying offense—did not contemplate including misdemeanors. The criticism of that amendment made it clear that it was rejected because many offenses that are defined as felonies are not of a violent nature or sufficiently "extreme" as to render an accompanying murder a capital offense. Speaking to the proposed amendment to include all felonies as the underlying offense, one senator questioned the senator who proposed the amendment:

> Do you understand that writing a hot check could be a felony? Do you understand that a man going down and just making or using a credit card incorrectly could be a felony? Do you understand that improperly filing a correct expense report or contribution report whenever you are reporting your election campaign expenses could be a felony?

Texas Senate, Floor Proceedings on H.B. 200, 63rd Leg., Transcript of Tape 93, Side 1 (May 23, 1973).

In view of the legislative history indicating that it was not the intent of the legislature to include as underlying offenses to capital murder anything but felonies of a violent nature or involving "extreme" circumstances, I can only conclude that the reference to "burglary" was intended to reference that offense as it is defined in section 30.02, and was not intended to reference "burglary of vehicles." It is also my opinion that to define capital murder as murder committed in the course of a burglary of a vehicle is violative of the Eighth and Fourteenth Amendments under *Furman*. Had the jury not found appellant guilty of murder committed in the course of robbery *as well as* murder committed in the course of burglary of a vehicle, I would be compelled to sustain these points of error.

MANSFIELD, J., joins.