# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00106-CR

**James Nunes, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. 612793, HONORABLE MIKE DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

James Nunes appeals his conviction for the misdemeanor offense of assault. A jury found him guilty and the court assessed punishment at a fine of $2000 and confinement for one year, but suspended imposition of sentence and placed appellant on community supervision for a two-year period. On appeal, by two points of error[1] appellant challenges the admissibility of hearsay statements as excited utterances and the prosecutor's improper use of an offense report and victim assault statement. For the following reasons, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

On May 13, 2002, appellant and his wife, Roberta Nunes, had an argument that escalated into a physical confrontation. The following facts are not in dispute. Between 5:30 and

---

[1] Appellant waived his third point of error at oral argument.

6:00 p.m. on that day, Mrs. Nunes arrived at appellant's place of employment, Dell Computers. She called appellant from the lobby. After approximately fifteen minutes, appellant came downstairs. The couple argued about appellant's cellular telephone bill, which Mrs. Nunes believed evidenced that appellant was having an affair. To avoid a confrontation in the office, the couple agreed to continue the conversation at home.

Appellant and Roberta Nunes left in separate cars. She drove behind him, at times aggressively and "right on [his] bumper." They continued to argue with one another on their cell phones as they drove home. At home, as was their usual practice, appellant parked in the driveway and Mrs. Nunes parked in the garage. With Mrs. Nunes yelling, they continued to argue. As appellant began unlocking the door, Mrs. Nunes began to hit appellant on his back and head with her fists. Appellant struck back, by his own testimony, three or four times. He tried to "swat" her away and then grabbed her neck and pushed her away and over the arm of a nearby couch. By his own testimony, appellant admitted that, as he tried to swat her off and she would not let go,

> I finally just reached and grabbed her neck and tried to get her off of me, and then I finally squeezed a little bit to get her away from me and I pushed her to get her off of me. And she went backwards and she kind of fell backwards over the corner of the couch and hit her head.

Roberta Nunes fell from the couch to the floor, hitting her head on a coffee table hard enough to knock a chip out of the table and leaving a small piece of flesh on the table.

At 6:56 p.m., Mrs. Nunes called the 9-1-1 emergency operator, asking for assistance and advising the operator that appellant had tried to kill her. Appellant also spoke to the operator, asking for the police to be sent over and explaining that his wife was exaggerating.

2

Austin Police Officer Randy Garcia arrived at the Nunes home at 7:05. Through the front door of the residence, he heard a woman crying and screaming hysterically. When Roberta Nunes answered the door, he observed that she was "crying, hysterical, fearful, very emotional." She immediately told Garcia that her husband had hit her and banged her head against a coffee table. She had visible injuries. The officer attempted to calm her and then began to ask her questions to determine what had transpired.

Officer Garcia testified that Roberta Nunes told him that she and her husband argued over the telephone bill. She described to him the confrontation at appellant's office and the continued argument by telephone as they drove home. She then told the officer that appellant grabbed her by the neck "and started banging her head against the kitchen counter." After banging her head against the kitchen counter several times, "she stated that Mr. Nunes punched her in the face with a closed fist." She then "stated that Mr. Nunes grabbed her again and threw her down the couch and she hit her head against the coffee table." She then ran to the telephone and called 9-1-1.

When Michael Wright, the district commander of Austin-Travis County EMS, arrived approximately an hour after the incident, he saw that Roberta Nunes was visibly upset and tense, and was gripping herself. He observed she had a bruise to her right cheekbone, a knot on her head inside the hairline, and an abrasion or scratch on the left side of her face. She told him of pain in her neck, the top of her head, and on the side of her face. Commander Wright testified: "She said that her husband had grabbed her and thrown her down." Wright concluded that the injuries were not life threatening so he sought to provide reassurance to her. Wright testified that, in addition to Roberta

Nunes's injuries, he observed other indications that she had been assaulted, including a piece of flesh on the coffee table that appeared to come from the top of her head. As she was taken to the ambulance, she continued to appear "visibly upset."

At the hospital, Roberta Nunes was treated by Dr. Richard Gmitter, who is a board-certified emergency physician. He testified that Roberta Nunes complained of pain in her head and throat and on her right hand. Her visible injuries included a contusion on the top of her head and hematomas on her neck. He testified that she told him that her husband had assaulted her, pushed her into furniture, and tried to strangle her.

Dr. Steven Fyfe treated Roberta Nunes four days later. He described her injuries, which included trauma to her larynx, multiple facial trauma with bruises around her face and left eye, bruising and a contusion on her neck, and bruising on the inside of the voice box on the part known as the arytenoid. Fyfe testified that the injuries were consistent with someone putting his hands around her throat and applying force to the outside.

Roberta Nunes did not testify at the trial but appellant did testify. The jury found appellant guilty of assault as alleged in the information.

## DISCUSSION

### *Excited Utterance Exception*

In his first point of error, appellant complains that the trial court erred in admitting the hearsay statements of Roberta Nunes through the testimony of other witnesses. He argues that the statements are inadmissible hearsay, fail to qualify as excited utterances under Texas Rule of

Evidence 803(2), and are violative of appellant's rights under the Confrontation Clause of the Sixth Amendment of the Constitution. The State responds that the record supports the trial court's admission of the testimony because Roberta Nunes was still under the stress and excitement of the event when she made the statements. We conclude that the trial court did not abuse its discretion in admitting the statements.

The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion. *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995). Absent a clear abuse of discretion, we may not reverse. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). As long as the trial court's ruling was at least within the "zone within which reasonable persons might disagree," we will not intercede. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). For hearsay to be admissible, it must fit into an exception provided by statute or rule. As one of these exceptions, rule 803(2) provides that an excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2); *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). There is no single factor governing the admissibility of evidence under this exception. Rather, the basis for the excited utterance exception is "a psychological one, namely, the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for

5

reflection necessary to the fabrication of a falsehood and the 'truth will out.'" *Evans v. State*, 480

S.W.2d 387, 389 (Tex. Crim. App. 1972).[2]

In determining whether a hearsay statement is admissible as an excited utterance, the

trial court may consider the time elapsed and whether the statement was in response to a question.

*Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Salazar*, 38 S.W.3d at 154. But it is

not dispositive that the statement is in response to a question or that it was separated by a period of

time from the startling event; these are factors to consider in determining whether the statement is

admissible under this exception. *Lawton*, 913 S.W.2d at 553; *Penry v. State*, 903 S.W.2d 715, 750-

51 (Tex. Crim. App. 1995).

The critical determination is "whether the declarant was still dominated by the

emotions, excitement, fear, or pain of the event" at the time of the statement. *McFarland v. State*,

845 S.W.2d 824, 846 (Tex. Crim. App. 1992). As a reviewing court, we must determine whether

the statement was made "under such circumstances as would reasonably show that it resulted from

impulse rather than reason and reflection." *Zuliani*, 97 S.W.3d at 596 (quoting *Fowler v. State*, 379

S.W.2d 345, 347 (Tex. Crim. App. 1964)). The facts of the *Zuliani* case are instructive. In *Zuliani*,

twenty hours passed before the complainant made statements about a physical confrontation with

her companion. Because she failed to appear at work the day after the confrontation, her sister and

---

[2] The general principle underlying admission of an excited utterance is based on the experience that, "under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock." 6 John Henry Wigmore, *Evidence* § 1747, p. 135 (3d ed. 1940). Such an utterance "may be taken as particularly trustworthy" or at least lacks the usual ground of untrustworthiness. *Id.*

6

the police went to her house. The complainant was reluctant to speak with police and was withdrawn and "real scared." *Id.* When her sister took hold of her hand and asked her what had happened, she began to cry and then gave her version of the events that had transpired. At trial, the sister repeated the victim's statements of what had happened. Despite the lapse of time and the fact that some of the declarant's statements were in the form of responses to questions, the trial court admitted the statements. In upholding the admission of the statements, the court of criminal appeals concluded that neither of those two factors was dispositive: "The key is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event.'" *Id.* (quoting *Lawton*, 913 S.W.2d at 553). The complainant's sister had testified that the complainant looked scared and withdrawn. She had not been separated from the defendant since the assault. Others had intervened only when she had whispered pleas for help to her brother-in-law over the telephone. Her injuries had not been treated. The court of criminal appeals concluded that the combination of factors supported the trial court's ruling that the statement was admissible as an excited utterance.

Here, the trial court conducted a preliminary hearing on the defense motion to exclude Roberta Nunes's hearsay statements. At the conclusion of the hearing, he overruled the motion to exclude the statements and stated:

> I will make this note for both parties, neither side has chosen to tell me exactly the extent of what these statements are, in fact there were objections when witnesses began to give me those statements; however, in reading the brief, it appears that perhaps, and I don't know—well let me just say this, those statements that have to do with the incident I will allow in, should—based upon what I've heard if the argument is they have not met the burden I believe they have. On the other hand, should the testimony stray from that I will certainly sustain an objection. And I really don't know what the statements are, I'm just assuming they're quite a few things just

7

from having read the brief that I was just submitted. So the motion will be overruled but I will entertain motions if necessary.

When appellant's counsel then requested a running objection "from that point forward to anything that was derived from Roberta Nunes that was the subject of this particular hearing that we just concluded," he did not pursue the objection to obtain a ruling. The court merely agreed to consider the issues as they arose. To preserve error, an objection must be timely, specific, and pursued to an adverse ruling. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

On appeal, appellant challenges the admission of specific statements of Roberta Nunes as repeated by Officers Garcia, Wright, and Weiss. Unlike at trial, he does not challenge the statements that were the subject of testimony by the two doctors.[3]

Here, the evidence supported the trial court's admission of the statements under the excited utterance exception. Officer Garcia arrived within a few minutes of the altercation. That Roberta Nunes was still dominated by the emotions, excitement, fear, and pain of the event is clear from the moment the officer approached the front door. When Mrs. Nunes opened the door, she was crying, fearful, and hysterical. As Officer Garcia observed her injuries, she told him that her husband had assaulted her. She told Officer Kevin Weiss, who arrived at the scene with Officer Garcia, "that her husband was trying to strangle her." She was still emotional when EMS Commander Wright

---

[3] Statements made for purposes of medical diagnosis or treatment describe "medical history, or past or present symptoms, pain, or sensations, or the inception or general character or the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Tex. R. Evid. 803(4); *Moore v. State*, 82 S.W.3d 399, 404 (Tex. App.—Austin 2002, pet. ref'd).

8

arrived an hour later. She was crying and visibly upset when she told Wright that "he had grabbed her by the throat and thrown her."

That Roberta Nunes was still dominated by the emotions, excitement, fear, or pain of the event is supported by the record. Moreover, except for Mrs. Nunes's characterization of her husband's intent "to strangle her," appellant testified to each of the challenged statements when he testified on his own behalf. The two doctors also testified as to her injuries and their cause. In addition, Mrs. Nunes's medical records, entered into evidence without objection, contained notes by medical personnel that she had a hematoma on the top of her head and bruises on her neck and that Mrs. Nunes stated, "husband tried to strangle me" and "husband banged her head against tile counter." When a court has overruled an objection to the admission of evidence, and that same evidence is later admitted without objection, the right to complain about the admission of the evidence on appeal is waived. *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998). We hold that the trial court did not abuse its discretion in admitting statements made by Mrs. Nunes to the three officers. We overrule appellant's first point of error.

### State's Offer of Inadmissible Evidence

In his second point of error, appellant complains that the trial court erred in denying his motion for mistrial following the State's attempt to offer into evidence the police offense report and evidence contained in the victim assault statement. Specifically, appellant urges that a mistrial should be granted in the face of misconduct by the prosecutor seeking to place inadmissible evidence before the jury.

9

We review the denial of a motion for mistrial under an abuse of discretion standard and will uphold the decision so long as it falls within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). The mere offer of inadmissible evidence by the State is not reversible error when the trial court sustains the objection and the evidence is not admitted. Error from improper testimony—or here, an improper offer—can be cured or rendered harmless by an instruction to disregard, as the court did here. *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000); *Martinez v. State*, 17 S.W.3d 677, 689 (Tex. Crim. App. 2000); *Hernandez v. State*, 805 S.W.2d 409, 413-14 (Tex. Crim. App. 1990). We must presume that the jury followed the court's instructions to disregard: "Only offensive or flagrant error warrants reversal when there has been an instruction to disregard . . . ." *Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000). A mistrial is a remedy reserved for highly prejudicial and incurable errors. *Wood*, 18 S.W.3d at 648.

In this case, as defense counsel was questioning Officer Garcia about aspects of his testimony that were omitted from his offense report, the prosecutor interrupted: "Your Honor, we could admit the offense report." The trial court correctly declined the offer: "Thank you for suggesting; however, he's examining the witness." Appellant's counsel did not object. At the beginning of her redirect examination, the prosecutor then asked to introduce the offense report on the ground that it was admissible under rule of evidence 107, the rule of optional completeness. Tex. R. Evid. 107. Outside the jury's presence, defense counsel complained that "[s]he chose to do it right in front of the jury" and asked "that the jury be instructed to disregard statements made by counsel and that the jury be instructed that counsel's statements were clearly inappropriate." The

10

trial court correctly observed that offense reports are generally excluded on grounds of hearsay and then instructed the jury to disregard the prosecutor's offer and her statements made in offering the "clearly inadmissible" document. *See Sauceda v. State*, No. 612-02, slip op. at 14-15, 2003 Tex. Crim. App. LEXIS 308, at *19-*21 (discussing rule of optional completeness).

The prosecutor then began her redirect examination of Officer Garcia. She asked the officer what the complainant told him was the reason her husband had given her for strangling her. When the officer indicated that he did not understand the question, the prosecutor asked whether the officer needed to refer to the offense report or the victim assault statement. Defense counsel objected and a discussion between counsel ensued at the bench. Immediately thereafter, the prosecutor elicited from the officer that the victim wrote why her husband was going to kill her "in her statement." The prosecutor then stated: "You can't say what she wrote down, I thought you took those notes, I apologize." The prosecutor then inquired whether the victim's injuries were consistent "with her story of events."

Defense counsel objected that the discussion of the victim assault statement buttressed the State's theory of the case with "another plainly inadmissible document." He again moved for a mistrial. The court sustained the objection, overruled the motion, and promptly granted defense counsel's motion to instruct the jury to disregard the prosecutor's inadmissible offer.

We are unable to conclude that the State's offer of the offense report, the existence of which was made known to the jury by appellant, constituted error requiring mistrial. *See, e.g.*, *Fuller v. State*, 501 S.W.2d 112, 114 (Tex. Crim. App. 1973); *Byrd v. State*, 491 S.W.2d 440, 441 (Tex. Crim. App. 1973); *Handley v. State*, 480 S.W.2d 738, 740 (Tex. Crim. App. 1972). Likewise,

11

reference to the victim's statement, while not commendable practice, does not give rise to the remedy of a mistrial. We overrule appellant's second point of error.

## CONCLUSION

Having overruled appellant's points of error, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   December 4, 2003

Do Not Publish