IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1221-03






JAMES MITCHELL, JR., Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


KINNEY COUNTY





 Keasler, J., filed this dissenting opinion in which Hervey, J., joined.



 The trial judge did not abuse his discretion. The Court of Appeals's decision does not
warrant review by this Court. The statements were admissible under Rule 803(24). And
Mitchell was not harmed by the admission of the statements. Because the majority disagrees
with me on all these points, I dissent. 

Standard of Review


 The admissibility of an out-of-court statement under the exceptions to the hearsay rule
is within the trial judge's discretion. (1) The appellate court should not conduct a de novo
review; its role is limited to determining whether the record supports the trial judge's ruling. (2) 
Therefore, a reviewing court should not reverse unless a clear abuse of discretion is shown. (3) 
An abuse of discretion occurs only when a judge's decision is so clearly wrong as to lie
outside the zone within which reasonable persons can disagree. (4) Additionally, a trial judge's
decision should be sustained if it is correct on any theory of law applicable to the case. (5) This
is especially true with regard to the admission of evidence. (6) 

 The Court of Appeals properly applied this standard of review. It concluded that the
trial judge did not abuse its discretion in admitting the testimony at issue because it was
admissible under Rule 803(24). It evaluated the testimony under this Rule and found it met
the Rule's requirements.

 The judge's decision to admit this testimony is not so clearly wrong as to lie outside
the zone within which reasonable people might disagree. Although the judge did not
consider the testimony pursuant to Rule 803(24), a look to those factors reveals, at most, a
close call. The majority analyzes the factors differently than the Court of Appeals and I do. 
Reasonable minds can disagree. Therefore, it cannot be said that the trial judge abused his
discretion in admitting the evidence.

Reasons for Granting Review


 Rule 66.3 of the Rules of Appellate Procedure sets forth reasons for granting
discretionary review of a Court of Appeals's decision. While the rule is not absolute, it
provides considerable guidance. It is worth noting that, in this case, not one of the listed
reasons for granting review is present.

 The appellate court's decision does not conflict with that of another appellate court. 
It has not decided an important question of state or federal law which we should settle. It has
not decided an important question of state or federal law that conflicts with a decision from
this Court or the United States Supreme Court. It has not declared a statute unconstitutional
or misconstrued Rule 803(24). The justices of the appellate court did not disagree - it was
a unanimous decision. And the appellate court has not so far departed from the accepted and
usual course of judicial proceedings as to call for an exercise of our supervision.

 Instead, the Court of Appeals applied established law to a specific set of facts, and it
did so in an unpublished opinion. There is just no reason for us to review the decision. 

Rule 803(24)


 Even if granting review were appropriate, we should conclude that the Court of
Appeals did not err in its application of Rule 803(24). In order for a declaration against
interest to be admissible under Rule 803(24), the statement must be self-inculpatory and it
must have sufficient corroborating circumstances to indicate its trustworthiness. (7) The
majority concludes that the statements fail both parts of this test. I disagree.

 The Court says that to satisfy the "self-inculpatory" test, the statement must be
"wholly self-inculpatory." (8) It relies on Cofield v. State. (9) But the Court has misread Cofield. 
In Cofield, we discussed the dangers of statements which inculpate both the declarant and
the defendant. But we also readily acknowledged that "a trial court does not always abuse
its discretion in admitting a hearsay statement which inculpates not only the declarant but the
defendant as well." (10) Additionally, in more recent years, we have found admissible
statements which were not wholly self-inculpatory. (11) 

 In this case, the boys' statements inculpated themselves and Mitchell. That does not
render them automatically inadmissible, as the majority seems to conclude. Instead, it means
that they satisfy the first test. They are, in fact, self-inculpatory. We should then proceed to
the second test.

 The statements satisfy that test as well, because there are sufficient corroborating
circumstances indicating the trustworthiness of the statements. The majority concludes
otherwise based in part on its determination that the boys' statements "changed several times
over the course of the interrogation," (12) but my review of the record does not support this
conclusion. 

 Myers testified that the boys told him that they had killed a buck and they were
waiting for their father to pick them up. Myers asked them "if there was anything else they
needed to tell" him, and they said, "No, that's all we did." Myers later found a buck and two
does that the boys had killed. He confronted the boys with that information, and they
admitted killing the does as well. The boys did not have a gun with them and told Myers that
they had given the gun to their father.

 Martinez testified that when he asked the boys what they were doing, they initially
told him "nothing," but then admitted that they had been hunting. He asked them where their
guns were, and they said that their father had come by to pick them up. He asked them what
they were dragging across the railroad, and they said that they had shot a buck. Martinez said
that they had dragged more than one thing, and the boys admitted that there were also a
couple more deer.

 The boys' story did not "change several times." While they may have initially said
that they had done "nothing," they admitted hunting to both agents. They stated first that
they had shot a buck, and when pressed, admitted also to shooting two does. This is not a
case of a story changing multiple times. It is a case of adolescents reluctantly giving up
additional information when pressed. These facts are not such that would render the
statements untrue. 

 The boys' story was corroborated in a number of ways. The buck and two does were
found. Mitchell showed up to pick them up. Mitchell is one of the boys' father. No vehicles
were found in the remote area. The boys had no weapons. A rifle of the same caliber that
was used to kill the deer was found in Mitchell's truck.

 The majority says that the statements were eventually made by "juvenile suspects who
had been apprehended at dusk"and were "in custody." (13) The majority exaggerates the facts. 
No handcuffs were placed on the boys and they were not interrogated in any kind of
interrogation room. Instead, they were questioned at the scene and then brought back to the
Border Patrol checkpoint, where they were "standing in the open section of our trailer." 
These facts do not indicate to me that the boys were attempting to curry favor or spread the
blame.

 The statements here satisfy Rule 803(24) and the Court of Appeals correctly found
them admissible.

Harm


 Even if the Court of Appeals were wrong, and the trial court did err in admitting the
testimony, the next step would be to remand to the Court of Appeals to consider whether
Mitchell was harmed. The majority conducts the harm analysis itself, but this is
inappropriate. Finding error where the Court of Appeals did not, we should remand for that
court to consider harm. (14)

 And even if we were to consider harm, the majority's harm analysis is flawed. The
Court evaluates harm by asking whether the properly-admitted evidence was sufficient to
convict Mitchell. But in a Rule 44.2(b) analysis, "[t]he question is not whether there was
sufficient evidence to support the verdict. Instead, the reviewing court should consider the
entire record . . ., including testimony, physical evidence, jury instructions, the State's
theories and any defensive theories, closing arguments, and voir dire if applicable." (15) The
court should also consider the nature of the evidence supporting the verdict, the character of
the alleged error and how it might be considered in connection with other evidence in the
case, whether the State emphasized the error, whether the erroneously admitted evidence was
cumulative, and whether it was elicited from an expert. (16) 

 The majority does not consider any of these factors except the nature of the evidence
supporting the verdict. If the Court is inclined to conduct its own harm analysis, it should
at least do so correctly.

Conclusion


 I would improvidently grant this petition because there is no valid reason for
reviewing the appellate court's decision. In lieu of that, I would affirm the Court of
Appeals's judgment. Because the Court does neither, I dissent.


DATE FILED: April 6, 2005

DO NOT PUBLISH
1. Lawton v. State, 913 S.W.2d 542, 553 (Tex. Crim. App.1995), overruled on other
grounds, Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998).
2. Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).
3. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).
4. Id.
5. McDuff v. State, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997).
6. Id.
7. Woods v. State, 2004 WL 2896253 *4 (Tex. Crim. App. 2004).
8. Ante, slip op. at 5.
9. 891 S.W.2d 952 (Tex. Crim. App. 1994).
10. Id. at 956.
11. Woods v. State, 152 S.W.3d 105, 112-13 (Tex. Crim. App. 2004); Dewberry v.
State, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999).
12. Ante, slip op. at 12.
13. Id. at 7.
14. See, e.g., Mitten v. State, 145 S.W.3d 225, 228 (Tex. Crim. App. 2004).
15. Bagheri v. State,119 S.W.3d 755, 763 (Tex.. Crim. App. 2003).
16. Id.