IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-74,636





NELSON GONGORA, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL OF CAUSE NO. 0810355A


FROM THE 371ST JUDICIAL DISTRICT COURT


TARRANT COUNTY






 Meyers, J., delivered the opinion of the Court, in which Price, Keasler,
and Hervey, JJ., join. Keller, P.J., concurs in points of error seventeen and eighteen,
and otherwise joins the opinion, and Cochran, J., concurs in point of error fifteen, and
otherwise joins the opinion. Womack, J., filed a dissenting opinion, in which Johnson,
and Holcomb, JJ., join.





 In March 2003, a jury convicted appellant of capital murder. Tex. Penal Code
Ann. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas
Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge
sentenced appellant to death. Art. 37.071, § 2(g). (1) Direct appeal to this Court is
automatic. Art. 37.071, § 2(h). Appellant raises twenty-seven points of error. We affirm.

FACTS


 On the night of April 7, 2001, Juan Vargas was driving his van accompanied by
appellant, Carlos Almanza, Albert Orosco, Steven Gongora, and James Luedtke when
they saw Delfino Sierra walking down the street and decided to rob him. When Vargas
pulled over, appellant and Orosco jumped out of the van, ran toward Sierra, and
demanded his money. When Sierra began to run, appellant shot him in the head with a
.38 caliber handgun. Appellant and Orosco then returned to the van. Appellant told his
companions that he "took [Sierra's] dreams" and did "what [he] had to do" and warned
them to remain silent. Appellant appeared to be bragging about what he had done. The
group then returned to appellant's house for a cookout.

 Appellant and Vargas were leaders in the criminal street gang Puro Li'l Mafia
("PLM"). Approximately two hours after appellant killed Sierra, Vargas drove appellant
and Almanza to the house of a rival gang member. Almanza, in order to become a PLM
member, shot into the house in retaliation for drive-by shootings that had occurred at
appellant's house. During the shooting, appellant stood outside the van armed with a
nine-millimeter handgun. The victim of this shooting survived.

 Several days later, an anonymous phone call helped establish that Vargas and
Maria Morales owned the suspect van. Vargas was arrested on April 27, and gave a
written statement to police naming Almanza as Sierra's killer. On May 9, Vargas met
with Detective Carlos Ortega to correct the falsehoods in his first statement and identified
appellant as the shooter. Vargas explained that he had initially lied because he feared
retaliation from appellant.

 On June 19, after he was arrested pursuant to a warrant, appellant waived his rights
and gave a voluntary signed statement. In his statement, appellant admitted getting out of
the van with others to rob Sierra. Then he heard shots and saw the man lying on the
ground, but claimed not to know who fired the shots.

INDICTMENT


 In his first three points of error, appellant claims that the trial court erred in
overruling his motion to quash the indictment because it failed to put him on notice that
the State would be seeking to establish his criminal responsibility as a party or co-conspirator. See Texas Penal Code §§ 7.02(a) and (b). Appellant asserts that the law of
parties must be pled in the indictment because guilt as a party is an "additional element of
the offense" which the State must prove beyond a reasonable doubt. Appellant relies on
Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 584 (2002),
to support his argument. 

 Apprendi and Ring apply to facts that increase the penalty for a crime beyond the
statutory maximum. Guilt as a party does not increase a defendant's responsibility for a
crime, nor does it increase the maximum sentence to which a defendant might be
subjected. It is well settled that the law of parties need not be pled in the indictment. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); Marable v. State, 85
S.W.3d 287 (Tex. Crim. App. 2002). Apprendi and Ring do not change this caselaw. 
Points of error one through three are overruled.

ADMISSION OF EVIDENCE


 Appellant complains in his fourteenth point of error that the trial court abused its
discretion when it prohibited him from cross-examining Vargas about an aggravated
robbery offense he had allegedly committed with Morales using the same van as the one
used in the instant capital murder. Appellant asserts that the trial court's ruling denied
him his confrontation, cross-examination, and due process rights.

 The Sixth Amendment to the United States Constitution guarantees the right of an
accused in a criminal prosecution to be confronted with the witnesses against him. U.S.
Const. amend. VI; Davis v. Alaska, 415 U.S. 308, 315 (1974). A primary interest
secured by the Confrontation Clause is the right of cross-examination. Davis, 415 U.S. at
315. A defendant is entitled to pursue all avenues of cross-examination reasonably
calculated to expose a motive, bias, or interest for the witness to testify. Hoyos v. State,
982 S.W.2d 419, 421 (Tex. Crim. App. 1998). Each Confrontation Clause issue must be
weighed on a case-by-case basis, carefully taking into account the defendant's right to
cross-examine and the risk factors associated with admission of the evidence. Lopez v.
State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). In weighing whether evidence must
be admitted under the Confrontation Clause, the trial court should balance the probative
value of the evidence sought to be introduced against the risk of harm its admission may
entail. Id. The trial court maintains broad discretion to impose reasonable limits on
cross-examination to avoid harassment, prejudice, confusion of the issues, endangering
the witness, and the injection of cumulative or collateral evidence. Id.; Lagrone v. State,
942 S.W.2d 602, 613 (Tex. Crim. App.), cert. denied, 522 U.S. 917 (1997). 

 In a hearing outside the presence of the jury, appellant told the court that Vargas
had participated in two shootings that were the subject of a plea agreement. Further, he
claimed that Vargas was involved in an aggravated robbery with his wife, Maria Morales,
and appellant needed to ask him about that crime for purposes of establishing bias for the
State. Appellant understood that Vargas intended to invoke his Fifth Amendment right to
remain silent about the aggravated robbery, but asserted that he needed to call Vargas to
the stand to determine if that was, in fact, what was going to happen.

 Vargas testified outside of the jury's presence that he had been arrested as a co-defendant for the same capital murder for which appellant was on trial. Pursuant to a plea
agreement in which he agreed to testify against appellant, Vargas was allowed to plead
guilty to a reduced charge of murder and would have a sentence of 23 years imposed at a
later time. The State also agreed that it would not charge Vargas in the second shooting
that happened around the same time. In response to questioning, Vargas told the court
that Morales was his common-law wife and that she had been charged with aggravated
robbery in a case unrelated to the instant offense in which she had pled guilty to the lesser
charge of robbery and was currently serving the time imposed on that plea. Vargas stated
that he had never been arrested for that crime, and he understood that the plea bargain he
had struck with the State had nothing to do with that offense. In fact, the State made it
clear, and Vargas stated that he understood, that if evidence later came to light connecting
him to that robbery, he could be charged.

 Appellant then attempted to establish through cross-examination that Vargas
owned the van that was used in both this capital murder and the robbery for which
Morales was serving time. However, Vargas' attorney informed the court that Vargas
intended to invoke his Fifth Amendment right to remain silent with respect to any
question pertaining to Vargas's alleged participation in that robbery. Appellant then
asked each question for the record, and Vargas invoked his right to remain silent. Vargas
did testify that he did not have a deal with the State concerning the aggravated robbery,
and his counsel reiterated that the robbery was not discussed during the plea negotiations. 
The prosecutor commented that it was intentionally not included in the discussions
because there was no current evidence of Vargas's involvement, not because of some
oversight.

 At the end of the examination, appellant argued that allowing Vargas to invoke the
Fifth Amendment violated Rule of Evidence 613(b), denied appellant "the right of
effective cross-examination and confrontation in front of the jury," and prevented him
from getting impeachment evidence before the jury. The State and Vargas's counsel
stated that the defense could ask Vargas whether the aggravated robbery offense had any
bearing on his plea bargain with the State regarding the instant offense. However, both
objected to the defense asking Vargas questions about the underlying facts of the robbery
and whether he was involved with it in any way, including questions involving his
ownership of the van.

 In the presence of the jury, Vargas testified that he had reached a plea agreement
with the State in the instant case. He stated that he had pled guilty to a reduced charge of
murder and would receive a twenty-three-year sentence in exchange for his truthful
testimony against appellant. Vargas testified that, after he was arrested for this offense,
he initially told the police detective that Almanza had shot the victim. However, Vargas
admitted to the jury that he had lied in that first statement because he was afraid appellant
would harm his family if he told the truth. After obtaining counsel, he again met with the
detective and informed him that he had lied in his earlier statement. 

 Under these circumstances, the trial court did not abuse its discretion in refusing to
allow appellant to question Vargas about the aggravated robbery charge. The testimony
established that the robbery was unrelated to the instant offense, and the issue of Vargas's
alleged involvement in the robbery was deliberately not included within the terms of plea
agreement securing Vargas's testimony in this case. The trial court's ruling did not
prevent appellant from pursuing all relevant avenues of cross-examination with Vargas. 
Hoyos, 982 S.W.2d at 421. An unrelated offense for which there was no evidence
demonstrating Vargas's involvement was not relevant.

 Appellant also complains in this point of error that the trial court erred when it
prohibited him from questioning Vargas about statements Vargas made to Morales
following the capital murder which exonerated appellant or at least "impeached
[Vargas's] versions of the facts related to the jury at trial and to the police on [two]
different occasions." However, appellant does not set out in his brief what statements
Vargas allegedly made to his wife, and the only record citations he provides refer to a
statement and testimony from Morales. Without more, this portion of appellant's point of
error is inadequately briefed, and we refuse to address it. Tex. R. App. P. 38.1. Point of
error fourteen is overruled. 

 In his related fifteenth point of error, appellant complains that the trial court
abused its discretion when it prohibited him from questioning Morales about the
aggravated robbery that she had allegedly committed using the same van as the one used
in this capital murder offense. Appellant asserts that the trial court's ruling violated his
confrontation, cross-examination, and due process rights.

 Because the aggravated robbery was not related to the instant crime, and because
the commission of that offense had no bearing on the plea agreement reached with
Vargas, testimony about the robbery was not relevant to appellant's trial, and the court's
ruling did not violate appellant's confrontation rights. Therefore, the trial court did not
abuse its discretion when it prohibited this testimony. 

 Appellant also complains in this point of error that the trial court erred when it
prohibited him from examining Morales about statements Vargas made to her following
the instant offense which exonerated appellant or at least "impeached [Vargas's] versions
of the facts related by him to the jury at trial and to the police on [two] different
occasions." 

 In a statement given to the police, Morales stated that on a night around the time of
the offense, Vargas came home crying. Although he would not initially tell her the
reason, Vargas eventually explained that he and some others had been in the van when
they saw a man (apparently referring to Sierra) that Almanza claimed owed him money. 
When they stopped the van, Almanza killed the man for no reason. (2)

 Even if the trial court abused its discretion when it refused to allow appellant to
cross-examine Morales regarding these statements, appellant was not harmed by this
error. See Tex. R. App. P. 44.2. Appellant claims that Morales's information would have
impeached Vargas's version of the facts as described to the jury at trial. However,
Vargas admitted at trial that he had initially told the police that Almanza had killed Sierra
but that he later recanted that statement explaining that he had lied. Thus, the information
that Vargas initially claimed that Almanza killed Sierra was elicited from Vargas himself. 
That he may have also told his wife this version of the story does not further impeach his
testimony at trial. Allowing appellant to cross-examine Morales on this point would not
have exposed any further motive, bias, or interest on Vargas's part. Appellant's fifteenth
point of error is overruled.

 In his sixteenth point of error, appellant complains that the trial court abused its
discretion in overruling appellant's motion for mistrial "because of the State's calculated
actions" to deny appellant mitigating testimony from his sisters, Ana and Erika Gongora. 
Appellant claims that the State and the trial court colluded against him to deny him this
evidence, and thereby, denied him due process.

 In arguing his point, appellant explains that, prior to their testimony, his sisters
were arrested on warrants alleging that they had threatened a co-defendant's family
members who had been watching the proceedings. Appellant claims that the arrest was
conducted at the direction of the prosecutors and with the assistance of the court's bailiffs
and the trial court judge after ex parte communications with the court. Furthermore,
because the State refused to dismiss the charges or offer grants of immunity "so as to
allow these witnesses to testify at the punishment phase" of appellant's trial, he was
deprived of this evidence because both sisters invoked their right to remain silent when
called to the stand. As a result, appellant was denied mitigation evidence and due
process. 

 According to affidavits filed by appellant's investigator, the sisters would have
testified to "family socio-economics, family work stability, the practical effects of
residential mobility, substance abuse within the household, general family/home
environment, and [appellant's] peers." The investigator stated in the affidavit that this
testimony from the sisters was critical because the other relatives who could testify to
these issues had criminal histories, suffered from learning or language disabilities that
might render their testimony unclear, or were not fluent in English, thereby reducing the
persuasiveness of the testimony.

 The record does not support appellant's assertion that the State's actions deprived
him of this evidence. The arrests resulted from the sisters' voluntarily undertaken
criminal acts. Further, the arrests were made outside of the presence of the jury, and the
State agreed that, should the sisters testify, no questions would be asked concerning the
arrests or the facts underlying the arrests. The trial court supported this concession,
stating that no such evidence would be allowed. Finally, although appellant apparently
preferred the sisters' testimony to that of other family members for various reasons, other
family members could have testified, and to some extent did testify, to the same
information that appellant asserts could only be provided by Ana and Erika. This record
does not establish that appellant was denied this evidence, only that he was denied the
evidence in the precise manner in which he wished to present it. Thus, the trial court did
not abuse its discretion in denying appellant's motion for mistrial.

 Appellant also claims in this point that the trial judge's role in these arrests
compromised the fairness and impartiality of the tribunal and showed that the judge was
not in fact a "neutral and detached" magistrate. Appellant contends that, following this
incident, the judge should have recused himself from the remainder of the proceedings. 
However, appellant failed to raise this issue at trial by filing a motion to recuse or
otherwise challenging the judge. Therefore, this portion of appellant's claim is not
preserved. Tex. R. App. P. 33.1. Appellant's sixteenth point of error is overruled.

LESSER INCLUDED OFFENSE CHARGE


 In his seventeenth point of error, appellant asserts that the trial court abused its
discretion in failing to include an instruction on the lesser-included offense of robbery in
the jury charge at the guilt phase. In his eighteenth point of error, appellant asserts that
the trial court abused its discretion in overruling his objection to the absence of such an
instruction. Appellant asserts that the admission of his confession at trial, in which he
admitted participation in the robbery but denied any part in the murder, supports the
inclusion of such an instruction.

 A charge on a lesser-included offense should be given when (1) the lesser-included
offense is included within the proof necessary to establish the offense charged; and (2)
there is some evidence that would permit a rational jury to find that the defendant is guilty
of the lesser offense but not guilty of the greater. Salinas v. State, 163 S.W.3d 734, 741
(Tex. Crim. App. 2005); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.),
cert. denied, 510 U.S. 919 (1993). The evidence must be evaluated in the context of the
entire record, and the reviewing court may not consider whether the evidence is credible,
controverted, or in conflict with other evidence. Moore v. State, 969 S.W.2d 4, 8 (Tex.
Crim. App. 1998); Rousseau, 855 S.W.2d at 672. Any evidence that the defendant is
guilty only of the lesser-included offense is sufficient to entitle the defendant to a jury
charge on the lesser-included offense. Id. However, the evidence must establish the
lesser-included offense as a valid rational alternative to the charged offense. Wesbrook v.
State, 29 S.W.3d 103, 113-14 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 (2001);
Arevalo v. State, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997). 

 The State concedes that robbery is a lesser-included offense of the instant capital
murder. Therefore, the first prong is met. We must next determine whether there is some
evidence from which a rational jury could acquit the defendant of the greater offense
while convicting him of the lesser-included offense. Salinas, 163 S.W.3d at 741. 

 According to appellant, his own written statement is sufficient to support the
lesser-included instruction on robbery. In his statement, appellant claimed that, "All we
wanted to do is get a little money and go about our business." However, this statement
must be evaluated in the context of the entire record. Moore, 969 S.W.2d at 8; Rousseau,
855 S.W.2d at 672. Even if the jury had believed appellant's statement in its entirety, it
still would not have entitled him to a lesser-included charge of robbery. Appellant was
indicted as a party or co-conspirator to the capital murder. Tex. Penal Code §§ 7.02(a)
and (b). Under these circumstances, appellant was criminally responsible for his co-defendant's actions, and because a murder occurred, appellant could also be held to
answer for that crime. Thus, the jury could not rationally have acquitted appellant of
capital murder and convicted him only of robbery. The trial court did not abuse its
discretion in refusing to give the lesser-included offense instruction. Points of error
seventeen and eighteen are overruled.

PROPER ARGUMENT


 In points of error nineteen through twenty-one, appellant asserts that the trial court
abused its discretion in overruling his motion for mistrial based upon the prosecutor's
improper comment on his failure to testify. Specifically, appellant complains about the
following argument:

 [THE PROSECUTOR:] I want to talk about the people you heard
from. We're talking about Juan [Vargas] and James [Luedtke] through this
entire deal. I used his first name, because, in this case, we have little
brothers involved, you know, Steven Gongora, you know, Pablo Vargas. 
I'm using first names to keep everybody clear.


 Who did you expect us to bring to you? There's six people inside
that van. When you look at it, here it is. Who would you expect for us to
give to you to establish who the shooter is? Are you going to be satisfied in
a case with gang members just looking at one person, even though he's
telling you the exact truth, no matter what? Even if the time that he first
told this story, he told the truth - he told the truth about someone he's
scared to death of - this is James Luedtke. He had nothing against him. He
had no crime pending. He had no reason to hide the truth. He had no
reason to talk to us, but he told us the truth. 


 You listen to people inside there. Who else would you want to hear
from, though? The shooter? We're not going to talk to that person. We're
not going to make a deal with that person. This person deserves what they
get. This person right here - 


 [DEFENSE COUNSEL:] Your Honor, could the record reflect he's
pointing at the Defendant's name on the chart - I can't see the Defense
exhibit number - as he was making the statement? 


 THE COURT: So reflect. 


 [THE PROSECUTOR:] Nelson Gongora, the shooter. That's the
person on trial. That's the person who deserves to be found guilty of capital
murder. 


 Who should we go ahead and talk to? Who should we go ahead and
present to you? Should we talk to the shooter? Should we talk to - 


 [DEFENSE COUNSEL:] Your Honor, I'm going to object. That's a
comment on the failure to testify. 


 [THE PROSECUTOR:] Let me make that clear. I don't mean talk
to the shooter. What I mean is this. Who - 


Defense counsel then asked for a ruling on his objection and the trial court sustained it. 
The trial court then granted counsel's request for an instruction to the jury to disregard the
comment but overruled counsel's motion for a mistrial. The prosecutor continued:


 [THE PROSECUTOR:] Let me say this. And I don't want to give
the wrong impression in any sort of way. We're asking, who do you expect
to take the stand? Who do you expect to hear from, right? 


 [DEFENSE COUNSEL:] Your Honor, I object. That's a
continuation of the previous comments, and I, again, object to commenting
on the failure to testify.


The court again sustained appellant's objection to the prosecutor's comment, granted his
request to instruct the jury to disregard the comment, and overruled his motion for a
mistrial. The prosecutor continued:


 [THE PROSECUTOR:] I don't want - to make it clear, y'all,
Defendant has a Fifth Amendment right not to testify. And, of course - and
I don't want to give any wrong impression on that whatsoever. Okay? 


 What I want to talk about is this. When you talk about the credibility
of a person, I wish you - and I made a - I made a big mistake there. I'll
make it very clear. I'm not talking about, do you want to hear from him,
because you can't do that. 


 [DEFENSE COUNSEL:] Your Honor, again, I'm going to object. 
It's on the same continuing subject matter. We object to comment on the
failure . . . to testify.


 THE COURT: As to that particular statement, overruled. 


 [THE PROSECUTOR:] Let me back up and tell you this. Let me
define it by the roles in the car. That's what I'm trying to get at. Okay? 


 The roles in the car are this. You have a person inside the car who is
the shooter. You have a person inside the car who got out with the shooter. 
You have a person inside the car who was guilty - or, actually, may have
participated in another shooting later that night. You have a person inside
the car who is just sitting there who is present. And then you have a person
inside the car who is the Defendant's brother, right? Where is that person? 
We know the person was there. They could have brought that person, but
you never heard from that person. And that's - 


 [DEFENSE COUNSEL:] Your Honor, I'm going to object as to
what that person is and ask to approach the bench to make a record. 


 THE COURT: Counsel approach. 


 (At the bench, on the record:)


 [DEFENSE COUNSEL:] I'll be brief. 


 Judge, our objection is that we issued bench warrants and subpoenas. 
We asked to have people brought in. They took the Fifth. And when he
says "that person," that diagram is still up there showing Albert [Orosco]
and everybody else, and that is an improper comment, and it's not invited. 


 [THE PROSECUTOR:] Judge, I'm trying to correct that right now
to make it better in terms of I'm just talking about the roles of the persons
involved.


 THE COURT: All right. Sustain the objection, Counselor.


 [THE PROSECUTOR:] Excuse me. Let me make one comment for
the record also. 


 Immediately - what [the prosecutor] was talking about there, so it's
clear for the record, was that he mentioned the name "Steven Gongora." He
mentioned the name, and he said, "The Defendant's brother." And he said,
"Where is that person?" 


 Steven Gongora is the Defendant's brother, and his name is also on
the chart, and that's what he was talking about.


 THE COURT: All right. You need to clear it up, Counselor. 


 [THE PROSECUTOR:] I will. 


 (Open court:)


Defense counsel then asked if his objection was sustained. The trial court sustained the
objection and, on request of defense counsel, instructed the jury to disregard the
comment. The trial court then overruled appellant's motion for mistrial. The prosecutor
continued:


 [THE PROSECUTOR:] Ladies and gentlemen, I want to wrap this
up, because that's what I'm talking about, the confusion in the case. 


 When I - when you're talking about the people inside the car, this is
it. You have the person inside the van and, from all the testimony,
established one person is the shooter. You have a person in the car who got
out and could possibly have stopped the killing from ever taking place. 
You have a person inside the car, by the testimony, you all know was
involved in another shooting later that night. You have a person in the car
who was related to the Defendant. That is his brother. Right? Then you
have a person inside there who is just present. Okay? 

* * *


 Those are the different roles of the persons inside the car. You ask
who - you know, you hear from this case, and who should - you know, how
to determine the credibility. Who do you want to hear from? Who do you
expect to hear from? The person who wasn't involved at all, that had
nothing at all, just present during that deal? Of course, you hear from that
person. 


 When you're considering and evaluating the credibility of the next
person - and that's who I'm talking about in talking about who you're
going to hear from. I'm talking about, when listening to Juan Vargas,
there's different people who played different roles. When you consider the
fact that we actually spoke to him, that's what I'm talking about. I'm not
talking about who would you want to hear from, who would you expect us
to call, but I meant to define it in the terms of the roles of those involved in
the case. Okay? 


 The roles that are defined in this case are abundantly clear. When
you look at all the roles of those persons involved, the person in this case
who is, you know, least culpable, besides the person who didn't do
anything, is the driver, right? 


 That's what I wanted you to consider. That's what I was trying to
discuss about the different roles and who you would expect to hear from or
expect us, you know, to be looking at. That was it. Just examine their
roles. 


 When you look at all of this, the facts in the case are clear when you
establish who is the shooter. Determine the credibility regarding what you
heard. Determine the credibility by asking whether their statements were
consistent. The consistencies - consistencies throughout this trial are
abundantly clear. 


 When you look at this case, the fact is this. When Nelson Gongora
got back inside his car - excuse me - got back inside the van, was he
remorseful when he got back inside there? No. You heard from Juan and
James. When he got back inside there, the fact is, he wasn't crying. The
fact is, he was not remorseful. The fact is, he was not yelling at someone,
saying, "Why did you kill this person?" You heard from them. The fact is,
when he got back inside there, he was bragging about what he did. 


 You heard from James Luedtke what [appellant] said when he got
out - got inside that van. He said this. "I took his dreams. I took his
dreams." 


 Well, he not only took his dreams, he took the family's dreams. He
took a family's dreams. He took his brother's dreams. He took his
children's dreams. Took his wife's dreams. He took all of Delfino Sierra's
family's dreams. 

 A prosecutor's comment amounts to a comment on a defendant's failure to testify
only if the prosecutor manifestly intends the comment to be, or the comment is of such
character that a typical jury would naturally and necessarily take it to be, a comment on
the defendant's failure to testify. Wead v. State, 129 S.W.3d 126, 130 (Tex. Crim. App.
2004). It is not sufficient that the comment might be construed as an implied or indirect
allusion to the defendant's failure to testify. Id. 

 When viewed in context, the complained-of comments appear to be the
prosecutor's attempt to comment on appellant's failure to produce witnesses other than
appellant, which is a permissible area of comment. See Jackson v. State, 17 S.W.3d 664,
674 (Tex. Crim. App. 2000). Nonetheless, the prosecutor's actual comments tended to be
inartful and often confusing, leading the trial judge to sustain appellant's objections to the
remarks and to instruct the jury to disregard them. However, the court did not abuse its
discretion in thereafter overruling appellant's various motions for mistrial on this issue. 
On this record, the prosecutor's comments were not so blatant that they rendered the
instructions to disregard ineffective. Thus, the judge reasonably concluded that the
instructions to disregard effectively removed any prejudice caused by the prosecutor's
comments. See Moore v. State, 999 S.W.2d 385, 405-06 (Tex. Crim. App. 1999), cert.
denied, 530 U.S. 1216 (2000). Points of error nineteen through twenty-one are overruled.

 In his twenty-second point of error, appellant complains that the trial court abused
its discretion in overruling his motion for mistrial because of the prosecutor's improper
argument at the punishment phase of trial. During argument, the prosecutor reviewed
with the jury evidence of other crimes appellant had committed. In reviewing the
evidence of an assault appellant committed within three months of becoming an adult, the
prosecutor reminded the jury that the surviving victim had not been shown a photo spread
in the case and the wrong person, Pablo Vargas, had been charged with the crime. When
the victim came to court, she saw the person charged and stated that he was not the person
who committed the crime. The prosecutor then made the following statements of which
appellant now complains:

 [THE PROSECUTOR:] In this case, the criminal justice system
somewhat failed [the victim] Amy Arreola, and y'all can resolve this. 
Something kind of unique in that case happened. They didn't show the
victim a photo spread. No one was shown a photo spread in that case. Sure
enough, when she went to court, when the person who was supposedly
charged with this offense went to court, Amy looked at this person and said,
"That's not the person who did it." 


 That's why [co-counsel] offered these plea papers here. Y'all heard,
once the victim went to court out at juvenile, Amy, she looked at the person
who was willing to accept the guilt for this - remember, that was Pablo
Vargas. And you heard from Maria Almendarez [a witness who identified
appellant as the actual perpetrator]. Why would [Vargas] do that? Frankly,
because having to rat out [appellant] has more repercussions than simply
accepting the guilt. 


(Emphasis added). Appellant then objected that this argument was outside of the record,
and the trial court sustained the objection. The court thereafter granted appellant's
request that the jury be instructed to disregard the comment, but denied appellant's
motion for mistrial. 

 Even assuming that the prosecutor's comment was improper, it was not so blatant
that it rendered the instruction to disregard ineffective. Thus, the judge reasonably
concluded that the instruction to disregard effectively removed any possible prejudice
caused by the prosecutor's comment. See Moore, 999 S.W.2d at 405-06. Point of error
twenty-two is overruled.

CONSTITUTIONALITY AND RELATED ISSUES


 In his fourth through ninth points of error, appellant claims that the mitigation
question submitted to the jury pursuant to Article 37.071, section 2(e), is unconstitutional,
and that he was denied his right to due process and to a jury trial because the court
refused to instruct the jury that the State had the burden to prove beyond a reasonable
doubt that there was insufficient mitigating evidence to support a life sentence. Appellant
relies upon the United States Supreme Court's opinions in Ring, 536 U.S. 584, Apprendi,
530 U.S. 466, and their progeny to support his argument. We have previously rejected
such claims and appellant has given us no reason to revisit the issue here. See Perry v.
State, 158 S.W.3d 438, 446-47 (Tex. Crim. App. 2004), cert. denied, 126 S.Ct. 416
(2005). Appellant's fourth through ninth points of error are overruled. 

 In his tenth through twelfth points of error, appellant claims that the Texas capital-
sentencing scheme is unconstitutional, and that he was denied due process and his right to
a jury trial because the court refused to define "probability" for the jury as that term is
used in the future-dangerousness punishment question. See Article 37.071, § 2(b)(1). 
This Court has repeatedly held that failing to define the term "probability" does not
render the death-penalty statute unconstitutional. Escamilla v. State, 143 S.W.3d 814,
828 (Tex. Crim. App. 2004), cert. denied, 125 S.Ct. 1697 (2005). Points ten through
twelve are overruled.

 Appellant asserts in his thirteenth point of error that he was denied his
constitutional rights 

 because the Texas death penalty scheme diminishes the burden placed upon
the State of Texas to establish an actor's guilt of an intentional capital
murder on evidence amounting to only mere anticipation of the act of [sic]
although the actor's [sic] neither intended the result nor the same flowed
from his own intentional conduct so that the Texas death penalty scheme is
unconstitutional.


In arguing his point of error, appellant refers to both the conviction of a defendant and the
process of sentencing-two different phases of trial to which slightly different laws can
apply. Thus, appellant's point as phrased is confusing. Nonetheless, we interpret
appellant's point to be a challenge to the constitutionality of what has come to be known
as the "anti-parties" charge of Article 37.071, section 2(b)(2), because of his citation to
the United States Supreme Court cases of Enmund v. Florida, 458 U.S. 782 (1982) and
Tison v. Arizona, 481 U.S. 137 (1987), to support his claim. 

 Both Enmund and Tison were concerned with the implementation of the death
penalty on defendants who were not proven to have an intent to kill. In Enmund, the
Supreme Court held that the Eighth Amendment of the United States Constitution
proscribes the execution of an individual who, albeit acting in the commission of a crime
with others, does not himself intend that murder be committed and participates in only an
attenuated capacity. Enmund, 458 U.S. at 790-91; see also Lawton v. State, 913 S.W.2d
542, 555 (Tex. Crim. App. 1995), cert. denied, 519 U.S. 826 (1996). In Tison, the
Supreme Court clarified Enmund and held that the federal constitution does not proscribe
the execution of a major participant in an offense who possesses "reckless indifference"
towards a murder committed by parties acting with him in a crime. 481 U.S. at 158;
Lawton, 913 S.W.2d at 555.

 The testimony in the instant case showed that appellant himself exited the van and
shot the victim. Thus, he was a major participant in an offense who possessed "reckless
indifference" towards the murder. Considering the evidence, the fact that the jury was
authorized by the charge to convict appellant as a party does not make Article 37.071,
section 2(b)(2) unconstitutional as applied to appellant in this case. See Cantu v. State,
939 S.W.2d 627, 644 (Tex. Crim. App. 1996) (holding that in reviewing the
constitutionality of a statute, we view the statute as applied to appellant only). 
Appellant's thirteenth point of error is overruled.

 In his twenty-third point of error, appellant asserts that the "10/12" rule of Article
37.071 violates the Constitution. In his twenty-fifth point, appellant asserts that the
death-penalty scheme is unconstitutional "because of the impossibility of simultaneously
restricting the jury's discretion to impose the death penalty while also allowing the jury
unlimited discretion to consider all evidence militating against imposition of the death
penalty." This Court has previously considered and rejected these claims, and appellant
has given us no reason to reconsider them here. Escamilla, 143 S.W.3d at 828. 
Appellant's twenty-third and twenty-fifth points of error are overruled.

 In his twenty-fourth point, appellant asserts that he was denied due process by this
Court's refusal to review the sufficiency of the mitigation evidence. In his related point
of error twenty-six, appellant asserts that there is sufficient evidence of mitigating
circumstances to require that appellant's death sentence be set aside and reformed to
reflect a sentence of life in prison. Appellant correctly states that we do not review the
sufficiency of the mitigation evidence. See Green v. State, 934 S.W.2d 92, 106-07 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997). We have also held that the failure
to conduct such a review does not violate an appellant's constitutional rights. Id. 
Appellant gives us no reason to reconsider that holding. Points of error twenty-four and
twenty-six are overruled. 

 Appellant asserts in his twenty-seventh point of error that the cumulative effect of
the above-enumerated constitutional violations denied him due process of law. Because
appellant has not shown any constitutional violations, there can be no cumulative effect. 
Escamilla, 143 S.W.3d at 829. Point of error twenty-seven is overruled.

 We affirm the judgment of the trial court. 


Delivered: February 1, 2006

Do Not Publish
1. Unless otherwise indicated, all references to Articles refer to the Code of Criminal
Procedure.
2. At trial, Morales claimed her Fifth Amendment privilege with regard to questions about
any offenses, and she claimed spousal privilege with regard to questions concerning anything her
husband might have said to her.